## THE LAKE SHORE.

### (District Court, N. D. Ohio, E. D. October 15, 1912.)

### No. 2,517.

1. COLLISION (§ 91*)—LIABILITIES OF VESSELS—CAUSING INJURY TO ANOTHER VESSEL.

The Butler, the down-bound of two steamships meeting in the Vidal Shoal Cut Channel, then 2,800 feet long and 250 feet wide, struck the south bank of the channel, and was injured. As the down-bound vessel under the rules she had the right of way over the Lake Shore, which was up-bound. *Held*, on conflicting evidence, that the Butler gave a check signal to the Lake Shore before either entered the cut, and that the injury to the Butler was caused by the fact that the Lake Shore did not heed such signal, but proceeded into the cut, and crowded the Butler against the bank.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192; Dec. Dig. § 91.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Collision (§ 18*)—Liabilities of Vessels—Causing Injury to Another Vessel.

A vessel which, by her negligent navigation, causes another to injure herself by striking against a bank or other obstacle, is as much responsible for the damage as though it was caused by direct collision between the two.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 16; Dec. Dig. § 18.*]

In Admiralty. Suit by the Tonopah Steamship Company, owner of the steamer Joseph G. Butler, Jr., against the steamship Lake Shore; Gilchrist Transportation Company, claimant. Decree for libelant.

Goulder, Day, White, Garry & Duncan, of Cleveland, Ohio (O. D. Duncan and Robert G. McCreary, both of Cleveland, Ohio, of counsel), for libelant.

A. J. Gilchrist, of Cleveland, Ohio, for respondent.

DAY, District Judge. [1] This libel alleges a cause of damage to the libelant's steamer, Joseph G. Butler, Jr., by the steamer Lake Shore about 10 o'clock p. m. of the night of June 28, 1907, in the Vidal Shoal Cut Channel. The Vidal Shoal Channel is a channel cut through rocks, and in 1907, at the time of the accident, was approximately 2,300 feet long and about 250 feet wide. Its general direction is marked by the Canadian Canal Ranges, which mark the center of the cut. The northern side of the cut, at the upper or westerly end, is marked by a red float light, and three spar buoys are below, or to the eastward of, the float. There are no lights on the southerly side, but there are four stakes, the extreme westerly stake being about 50 feet more to the westward than the float light, and the last stake on the southerly side is somewhat to the westward of the last stake, as it marks the extreme lower or eastern end of the cut on the southerly side. Below the Vidal Shoal Channel there is open water of a minimum depth of 23 feet, which extends for a considerable distance. This open expanse of water is perhaps half a mile in length, permitting of sufficient space for vessels to turn around, and to wait and anchor before entering the Vidal Shoal Channel. It also appears that there is a current of perhaps two miles an hour running through this Vidal Shoal Channel.

It is claimed on behalf of the Butler: That she was down-bound with a cargo of 9,800 tons of iron ore, and a uniform draught of about 20 feet. At a point designated as Big Point, some distance above the Vidal Channel, the Butler was checked to half speed, and later checked to slow speed, and proceeded at a rate of between four and six miles an hour. That, when she arrived at the point where the turn onto the Canadian Canal Ranges was to be made, she commenced making the turn in the usual manner on her starboard helm. That at this time the lights of the vessel, which afterwards proved to be the Lake Shore, were seen coming out of the Canadian Canal Piers. That the Butler immediately blew a signal of three whistles to the Lake Shore as a request for the Lake Shore to check, so that the vessels would not meet in the Vidal Shoal Cut. Shortly after

this, the Butler blew a signal of three long and two short blasts for the Canadian Lock, this being the customary signal to notify the Canadian Lock officials of an approaching boat. The Lake Shore answered the three blast signals by blowing one. The Butler blew three again, followed by one whistle, and the Lake Shore answered with three whistles. That by the time this signaling had been completed the Butler had completed the turn, and was headed down on the Canadian Canal Ranges. The Butler continued down about on the ranges, and passed the red float light marking the upper end of the cut on the port hand in the usual manner, and, when the Butler was getting pretty close to the lower end of this cut, it was seen that the Lake Shore was not stopping below, but was coming ahead, and was dropping to the southward of the ranges, some distance below. The Butler's wheel was ported enough to clear the Lake Shore, and her engines rung up for full speed. She swung to starboard under the porting of her helm just as her bows met the Lake Shore bows, her starboard side forward about abreast of No. 1 hatch, struck on the bank to the southward of the southerly line of the channel. This rolled her over to port, and the porting bilge also struck, and damage to both sides was sustained. That at the time of the striking of the Butler the pilot houses of the two boats were abreast and their sides at that time were from two to eight feet apart, and at this time both boats were well to the southward of the range.

It was the contention on behalf of the Lake Shore: That she was up-bound and left the Canadian Canal at about 9:40 p. m. After leaving the canal, she proceeded at a speed of five or six miles an hour. That somewhere between the turn from the course leading from the canal and the Vidal Shoal Cut the Lake Shore passed the steamer Advance port to port; and, after passing the Advance, made out the red light and range lights of the Butler somewhere in the neighborhood of Big Point. The Lake Shore at this time was approaching the lower end of the Vidal Shoal Cut. A little later those on board the Lake Shore saw the Butler open up her green lights, the Lake Shore at that time entered the Vidal Shoal Cut, and immediately blew a three-blast signal. The Butler then blew one, which the Lake Shore answered with one, followed by a second three-blast signal, to which no reply was received.

It is contended that the Lake Shore was at this time on the range course; that she continued on the range course, and, when about 1,000 to 1,200 feet from the Butler, they ported their wheel, and crawled to the American side of the channel as the Butler was coming on an angle headed for about the Lake Shore's texas, and showing both side lights. After porting the Lake Shore headed on the float light until they got close up to the northward side of the channel, when they straightened up. The Lake Shore met the Butler just as the bows of the two boats were abreast of the float light; the texases of both boats being about abreast of each other at the same time as they were abreast of the float light. The Lake Shore passed the float very close, so close that they were apprehensive of striking it. The steamer Joseph G. Butler is a freighter of 6,588 gross ton, 525

feet in length, 55 feet beam. The Lake Shore is a freighter 3,871 tons, 356 feet in length, and 50 feet beam.

From an examination of the record it is quite apparent that the only witnesses, which are the officers and the crew of these respective ships, stick very closely to their own boats, and it will be necessary to examine this record in order to arrive at the probabilites of its occurrence.

Under both stories, a one-whistle passing agreement was established. It is also noticed that both sides claim that three-whistle signals were blown and answered, and that these signals were intended as checking signals. The three principal contradictions are then: First, as to the signals given by the respective boats; second, the meeting place of the boats; and, third, as to which boat was crowding the other. A portion of rule 5 of the pilot rules of the Great Lakes reads as follows:

"That in all narrow channels where there is a current, and in the rivers St. Mary, St. Clair, Detroit, Niagara and St. Lawrence, when two steamers are meeting, the descending steamer shall have the right of way, and shall, before the vessels shall have arrived within the distance of one-half mile of each other, give the signal necessary to indicate which side she elects to take."

The witnesses for the Lake Shore on being examined some five years after the accident with striking distinctness seem to recall the details of the occurrence, although the Lake Shore was not in any way damaged at the time, and with great uniformity place the texases of the two boats and the float light in a direct line. A consideration of the probabilites would not indicate such a position. The Butler was the down-bound boat, coming with the current, and it would seem natural that, it being the Butler's duty to blow first, the Butler would blow first, and did blow first, in order to establish a passing agreement. The whistle blown by the Butler for the Canadian Canal would give notice to the Lake Shore that the Butler intended to pass through the Shoal into the Canadian Locks. It is well established in navigation that a vessel proceeding against the current is much more easily controlled than proceeding with the current. The Galatea, 92 U. S. 439, 23 L. Ed. 727. It was then more probable that the Butler would blow to the Lake Shore than for the Lake Shore to blow first to the Butler. The location of this occurrence given by the officers and crew of the Lake Shore is not as probable as that given by the officers and crew of the Butler. The testimony of the captain of the Butler, I think, is frank and distinct concerning the signals and the location of the accident. He gives the meeting of the boats at a place well down the Vidal Cut, and I think that this is where they met. The contention is made that the Butler struck a boulder, but this is in no way established by the testimony in this case. In this narrow channel, only 250 feet in width, it is apparent from the record that the Lake Shore forced the Butler off of the ranges, compelling the Butler to run aground and suffer the injuries complained of.

[2] In this case I am confronted with interested, biased witnesses, and I am compelled to arrive at my decision from the probabilites of the situation as I have before indicated. There was no contact be-

tween the Butler and the Lake Shore, but the Lake Shore by her negligent navigation caused the Butler to damage herself by striking and accordingly the Lake Shore is as responsible for the damage as if she herself had inflicted it by direct contact. The Maggie J. Smith, 123 U. S. 349, 355, 8 Sup. Ct. 159, 31 L. Ed. 175; The Ohio, 91 Fed. 547, 558, 33 C. C. A. 667; The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. 468, 28 L. Ed. 812.