## THE ASHLEY.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 133.

COLLISION ⊂⊃95—TUGS WITH TOWS CROSSING—VIOLATION OF RULES.

A collision in East River between the tows of two tugs on crossing courses *held* due to faults on the part of both tugs; the one having the other on her starboard side for violating the starboard hand rule, and the other for violation of the local rule requiring vessels navigating the East River between the Battery and Blackwells Island to keep as nearly as possible in the center.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ⊂⊃95.

Collision with or between towing vessels and vessels in tow, see note to The John Ellis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Eastern District of New York.

James J. Macklin, of New York City (James J. Macklin and Frank V. Barns, both of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is an appeal from a decree holding the steam tug Ashley solely at fault for a collision between a loaded car float on her starboard side and the libelant's scows fast on each side of the tug Volunteer. The opinion of the court below is reported in 209 Fed. 965.

The Ashley was bound up the East River for Long Island City, and the Volunteer was bound down the river to Clinton avenue, Wallabout. The collision took place June 20, 1911, at about 9 p. m. on a clear night and ebb tide, just below the Williamsburg bridge on the Brooklyn side of the river.

The master of the Volunteer testified that when he was above the bridge about opposite South Second or South Third street he saw the red light of the Ashley, crossing the river from Corlears Hook on the New York side of the Brooklyn side, and was showing her his own green light. The vessels must have been above 1,500 feet apart. He blew a signal of two whistles and received an answer of one; then he blew a second signal of two and an alarm, and received an answer of one and an alarm. The Ashley held her course and speed.

The District Judge was of opinion that the starboard hand rule did not apply, because the courses of the vessels did not intersect. His

theory apparently was either that the Volunteer would have crossed the bow of the Ashley before the courses intersected, or that there was not room enough on the Brooklyn side for the Ashley and the Volunteer to pass port to port. Tht starboard hand rule is intended to avoid just such speculations. When the courses as being steered are crossing courses, they involve risk of collision, and the burdened vessel is required to keep out of the way and the privileged vessel to hold her course and speed. Articles 19 and 21 of the Inland Rules. The account given by the master of the Volunteer brings the situation precisely within this article. He could not compel the Ashley to give way by blowing a signal of two whistles, and, notwithstanding inspectors' rule 2 as to crossing signals (Edition of May 1, 1912), the Ashley had a right to insist upon her privilege under the Inland Rules by answering with one.

While we think the Ashley was not at fault under the Inland Rules, she was at fault for violating the local rule prescribed by section 757, c. 410, Laws 1882 N. Y., which requires vessels navigating in the East River, between the Battery and Blackwells Island, to do so as near as possible in the center. No reason is given why, being bound to a point two miles higher up, she should not have kept in or near the middle of the stream.

The Volunteer did suggest a reason for not doing so herself, the validity of which we need not consider, as we have held her at fault for another reason. If the Ashley had been going up in midstream, or near thereto, it is not likely that any collision would have occurred. The vessels would have passed starboard to starboard. Therefore the Ashley's violation of this local rule may have contributed to the collision, and for that reason she must also be held at fault.

Decree modified, by directing the court below to enter a decree holding both vessels at fault.