## THE SOCONY NO. 19.

## THE NEW YORK MARINE NO. 3.

Circuit Court of Appeals, Second Circuit. November 12, 1928.

Nos. 39–42.

Barry, Wainwright, Thacher & Symmers, John C. Prizer, and Everett Colby, all of New York City, for the Socony No. 19.

Burlingham, Veeder, Masten & Fearey, of New York City (P. Fearson Shortridge and Chauncey I. Clark, both of New York City, on the brief), for the New York Marine No. 3.

Single & Single and William J. Mahar, all of New York City, for appellee Mc-Loughlin.

Before MANTON, L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▮ We are content to accept the finding of the judge as to the place of the collision, though so far as we can see it was equally open to him to place it further to the east or to the west. He saw the witnesses, and under familiar law his conclusion we should accept. So much granted, the Socony's navigation was plainly at fault. Either she was not alert, and saw the Marine too late, or she was unaccountably tardy in taking action. She had ample water on her starboard hand, and can be excused only on the theory that she was confronted by a sudden emergency when the Marine pulled out from under the Reading's stern, a theory which her answers do not expressly allege. While we think it a fault for the Marine so to navigate, we cannot believe that her speed against the tide with such a tow was fast enough to create anything remotely like an emergency, or to prevent the Socony from avoiding the collision. Indeed, the exchange of passing signals, as well as the emphasis upon the crowding, forbid the conclusion that the case was a surprise; had it been, the Socony would have backed and blown an alarm.

Coming, then, to the Marine, we agree that it should have been unnecessary for her to pass the Reading. It is no excuse that she failed to make enough allowance for the Reading's striking the tide and her own closing up of the distance between them. She should have anticipated this and kept a distance which would have allowed her to stay in tandem. It was a fault to try to pass because of the presence of the dredge. Considering that this craft was anchored well out in the fairway, and that the Reading occupied 150 feet more, the presence of the Marine's tow abreast added an obstacle which might incumber the navigation of westbound craft. Indeed, if the two tows had held their positions when they steamed past the light, the Marine would have plainly been out of position. This would have been all the more true,

when the flood should catch the tows and swing them into the bay, as later on it would probably have done.

Yet, although we think that the Marine's maneuver was unjustifiable, this is because of a situation which would have arisen later. So far as concerns the Socony, it had not yet developed those embarrassments which condemn it. She had plenty of water to starboard, and, as we have already said, ample opportunity to accommodate her navigation to a situation not suddenly thrust upon her. Therefore, accepting the position of the collision fixed by the judge, as we do, we think that it was a case where the Marine's fault was a condition, not a cause, of the collision, The Clara, 55 F. 1021 (C. C. A. 2); The No. 1, 180 F. 969 (C. C. A. 2); The Morristown, 278 F. 714 (C. C. A. 2); Commonwealth, etc., Line v. Seaboard Transp. Co. (D. C.) 258 F. 707. By this we only mean that the results of the fault were apparent to the Socony in season, and that she could have avoided them, had she been properly attentive, while the Marine, once she got abreast of the Reading, was unable to do anything more than she did. Certainly it is true that, as between the two, the Socony was much more gravely at fault, and the case is one in which we will not search too closely as to the effect of the Marine's navigation.

The case is not wholly free from doubt, but we think that the District Judge was right, and the decree will be affirmed.