## JAMISON et al. v. DELAWARE, L. & W. R. CO.

## THE FULTON.

District Court, S. D. New York.
June 6, 1930.

Bigham, Englar, Jones & Houston, of New York City (Chas. Hagen, of New York City, of counsel), for libelants.

John E. Morrissey, of New York City, for the Fulton.

COXE, District Judge.

The collision in this case took place March 3, 1922, in broad daylight, opposite the Fulton Ferry slips on the Brooklyn side of the East River. The tide was strong ebb, and the weather clear. The tug, John Arbuckle, with Float 14 in tow alongside on her starboard side, was proceeding upstream near the middle of the river, but favoring the Brooklyn side, bound for the Jay Street Terminal, located beyond the Manhattan Bridge on the Brooklyn shore. The claimant's tug Fulton was proceeding down the river at full speed, with Float 28 in tow on her starboard side, bound for Hoboken, N. J. The course of the Fulton was about in midstream, the traffic on the westerly side of the river being so dense as to make navigation there difficult. On this showing, concededly the vessels should have passed port to port. But it is urged on behalf of the Fulton that the presence of the ferryboat Mineola so altered the situation as to make such a passing impossible, and that the unjustified refusal of a starboard passing by the Arbuckle was the cause of the collision.

As the Arbuckle approached a point opposite the Fulton Ferry, the ferryboat Mineola was emerging from her slip on the Brooklyn side bound for New York. Burns and Hocknell, two deck hands on the Arbuckle, testified that repeated two-blast whistles were blown by the Arbuckle to a tow further in shore towards Brooklyn, which was being overtaken by the Arbuckle. These witnesses were apparently oblivious to the presence of the ferryboat, and insisted that the signals were directed at the tow being overtaken and not at the ferryboat. It is entirely clear, however, from the testimony of Captain Androvette, master of the ferryboat, that a two-whistle signal was exchanged between the ferryboat and the Arbuckle, indicating that the Arbuckle intended to cross the ferryboat's bow. Captain Androvette also testified that after the Arbuckle had passed "fairly close" to the ferryboat, the ferryboat went under the Arbuckle's stern and proceeded on her way to New York.

The witnesses for the Fulton testified that after the ferryboat had exchanged a two-whistle signal with the Arbuckle, the ferryboat exchanged a two-blast signal with the Fulton, indicating that the Fulton would pass astern of the ferryboat; that this necessitated a change of course to port by the Fulton, thereby bringing the Fulton and the Arbuckle nearly in alignment and in such relative positions as to require a starboard passing; that the Fulton thereupon immediately indicated her desire for such a passing by blowing a two-whistle signal to the Arbuckle, which the Arbuckle did not answer; that this two-whistle signal was at once repeated by the Fulton, and then answered by the Arbuckle with a one-blast whistle; and that, as it was impossible to comply with the Arbuckle's cross-signal of one blast, the Fulton's engines were reversed and alarm signals blown, but it was too late to avoid collision. The port forward corner

of Float 14 came in contact with the starboard forward corner of Float 28, causing serious damage to Float 14.

■ Tucker, one of the Fulton's witnesses, testified that the Arbuckle moved slightly to port before the collision to enable the ferryboat to pass under her stern. Obviously, this testimony, if true, is important as tending to support the contention of the Fulton that just prior to the collision the vessels were in such a position as to require a starboard passing. I doubt, however, whether Tucker could have observed such a change in course by the Arbuckle, and I am inclined to think that no such change was in fact made. Furthermore, there is no mention of any such change either in claimant's answer or in the report of Captain Redmond, master of the Fulton, to the local inspectors immediately after the collision. These are significant omissions, and entitled to weight as discrediting the testimony that there was any change. The Richmond (D. C.) 114 F. 208, 212; The Noreuga (D. C.) 211 F. 355, 358; The Frostburg (D. C.) 25 F. 451, 455.

■ The fault of the Fulton is clear. On her own showing, she was threading her way through heavy traffic in the river, at high speed, with a strong following tide. Her course in midstream was in compliance with the East River statute. This course, however, necessitated extreme caution on her part not to bring herself into a position of danger with respect to upbound traffic rightfully using the easterly side of the river. I think she should have been proceeding at such rate of speed and under such control as to navigate by the ferryboat without interfering with the Arbuckle. If she had been moving slowly, she might easily have stopped to permit the ferryboat to pass, or at least have reduced her headway so as to make the sheer to port unnecessary. Instead, she appears to have turned at high speed abruptly towards the Brooklyn shore, thereby forcing the Arbuckle to make an immediate choice between acceptance of a starboard passing, which, at best, was an unusual maneuver and involved considerable uncertainty and risk, and an attempt to hold to the course she was on, in order, if possible, to extricate herself from a difficulty due primarily to the fault of the Fulton. That the choice made by the Arbuckle proved disastrous is no ground for believing that there would not have been a collision if the alternative course had been pursued. Nor is it any exoneration of the Fulton for forcing upon the Arbuckle a situation which made such a choice necessary.

It is insisted that the Arbuckle was also at fault for answering the Fulton's second two-blast signal with a one-blast whistle, in violation of Pilot Rule 2, forbidding the use of cross signals. But it is settled by numerous authorities that it is not an infraction of Rule 2 to give a cross signal where the vessel first signaling has indicated an improper course or maneuver. The Ashley (C. C. A.) 221 F. 423, 424; The Norfolk (D. C.) 297 F. 251, 255; The Terminal (C. C. A.) 290 F. 533, 536. I do not think, therefore, that any fault can be attributed to the Arbuckle for her one-blast whistle in answer to the two-blast signal of the Fulton.

■ The claimant has pleaded laches as a defense to the libel, and urges that the delay of four years in bringing suit has been prejudicial to its defense, owing to the death of Captain Redmond, master of the Fulton, and the loss of another material witness during the interval. Inasmuch, however, as the claimant was able to produce at the trial two seamen who were on the Fulton at the time of the collision, and three disinterested witnesses who saw the accident, I do not think it can fairly be said that the claimant was prejudiced by the delay. Furthermore, there was a plausible excuse for the delay in the protracted negotiations to effect settlement.

There may be a decree in favor of the libelants for full damages, but without interest.