### THE LUNA.

### THE REICHERT BOYS.
### THE NEW YORK CENT. NO. 17.

### THE JULIUS MILLER.
### No. 178.

Circuit Court of Appeals, Second Circuit.
March 6, 1933.

■

Arthur J. W. Hilly, Corp. Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., and William Leonard and John T. Condon, both of New York City, of counsel), for the City of New York.

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for New York Cent. R. Co.

Single & Single, of New York City (Thomas H. Middleton, of New York City, of counsel), for The Reichert Boys.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

■ The faults of the ferryboat are too plain for doubt. She came out at an undue rate of speed into a very nest of shipping. The tow of the Reichert Boys was on her port hand, close inshore; that of the No. 17 only a hundred feet further out. Nearly in front of her was Marine No. 10, also bound out and on her starboard hand another tug coming up from Quarantine. She tried to navigate between these vessels at a speed which she herself puts at ten miles. In addition she failed to see the No. 17 after passing between the Marine No. 10 or before she lapped the Reichert Boys. Some miscarriage was almost inevitable.

The No. 17 confesses that she was too close inshore, as certainly she was. This was a fault which clearly contributed to the eventual collision, regardless of whether her navigation under the circumstances was proper or not. She too is to be charged.

■ Our only difference with the judge is in his exoneration of the Reichert Boys. A fortiori, this tug was at fault for hugging the pier ends, a practice which tug masters will insist on pursuing, and for which their underwriters must pay. It is true that the fer-

ry successfully passed her bows; it is also true that when the ferry emerged from her slip the Reichert Boys was substantially in line with the No. 17. We do not say that she obscured the No. 17's lights; she did not. But, on the other hand, we can with reason say that, had she not been in the way, the ferry would have seen the No. 17 in season; for there would then have been nothing between the two vessels. The navigation of the ferry would certainly have been different; it is incredible that in such case she should have come so close aboard the No. 17 without seeing her. At least the Reichert Boys has failed to show that her position had nothing to do with the result, and, hers being a statutory fault, that is enough to cast her. The Ashley, 221 F. 423 (C. C. A. 2). The East River Statute (section 757 of the N. Y. Consolidation Act, chapter 410, Laws of 1882), which extends to the Battery, covered the locus in quo. While it may be true that the ferry backed into the tow, we are not disposed to regard this as a later and independent fault; rather we consider it navigation in extremis. It is not as though the ferry had backed after considered opportunity to act in the light of the position of all the vessels concerned. The Socony No. 19, 29 F.(2d) 20 (C. C. A. 2), was quite another situation.

Decree modified to hold all three vessels at fault.