## THE CLEVELANDER.

## THE PRIMROSE.

## GENERAL MOTORSHIP CORPORATION v. CORNELL STEAMBOAT CO.

### No. 346.

Circuit Court of Appeals, Second Circuit.
June 1, 1936.

Thomas H. Middleton, of New York City (Hill, Rivkins & Middleton, of New York City, on the brief), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann. of New York City (Robert S. Erskine, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This litigation results from a mishap which befell libelant's motor vessel Clevelander in the New York State Barge Canal on October 2, 1932. The Clevelander, loaded with cargo, was bound west. The respondent's tug Primrose, with a tandem tow of six barges, was bound east. They met and passed port to port about two and a half miles west of Lock 12. There was no collision, but, as the last barge was passing, the Clevelander struck bottom and stove a hole in her starboard bilge. The libelant contends that she was forced out of the channel by the faulty navigation of the tug in hugging the center of the channel and in allowing her tow to sag over into the Clevelander's waters. The place of grounding was close to Buoy 270, which the Clevelander passed at an estimated distance of 10 or 15 feet to starboard. After the accident, the canal officials discovered that Buoy 270 had in some unknown manner become misplaced so as to be 45 feet north of the actual channel, and that between the actual channel line and the misplaced buoy was a nest of boulders. Evidently it was upon one or more of these that the Clevelander ran while still proceeding within the supposed channel. The district judge held both vessels at fault; the tug because she and her tow were substantially over the middle of the true channel and thus caused the Clevelander to navigate closer to her side of the supposed channel than otherwise she would have had to do, and the Clevelander because she passed at an excessive speed, the suction thus created drawing toward her the last barge of the tow and necessitating the final slight change of course which brought her into contact with the boulders. An interlocutory decree for half damages was awarded the libelant from which each party has appealed, claim-

ing that the other should be held solely responsible.

There is no dispute in the testimony concerning the navigation of the vessels. As to this the master and first officer of the Clevelander were the only witnesses, and since they testified by deposition we are in as good a position to appraise their testimony as was the court below. No one on the tug or tow had any recollection of meeting the Clevelander or any knowledge that she had hit bottom, as she continued on her way without stopping and had neither blown alarms nor otherwise indicated that she considered herself in danger or had met with mishap.

The Clevelander is a vessel 254 feet in length, with a beam of 42½ feet, and draws slightly less than 10 feet. Her maximum speed in the canal is about 5 knots. With First Officer Peterson in charge, the master being off watch, she left Lock 12 at 12:20 p. m. The accident was logged at 12:50 p. m., so that she covered the distance between these points in just 30 minutes. It is approximately 15,000 feet as shown by the chart. She saw the tug when the vessels were about a mile apart, and when they had approached to within about 1,500 feet she signaled for a port to port passage, altering her course to starboard. The Primrose and her tow appeared to be about in the center of the channel and continued on without answering the signal and without hauling off to their right. Nevertheless the Clevelander proceeded because there was apparently room to pass. When she reached the tug, there were 30 or 40 feet between the vessels, but as she got alongside the barges the tow began to sag over so that she "had to port the wheel some more so as to clear the stern barge." This was passed at a distance of only 4 to 8 feet, and the Clevelander was then within 10 to 15 feet of the supposed channel line marked by Buoy 270. It was undoubtedly this final slight change of course to starboard, as the District Court found, which caused the Clevelander to hit bottom.

■ If the sagging of the tow which necessitated such change to starboard was due to faulty navigation by the tug, the latter must be held liable for crowding the Clevelander out of her course, even though there was no collision with the stern barge. The Lake Shore, 201 F. 449 (D.C.N.D.Ohio); The Claremont (D.C.) 12 F.Supp. 288, af-

firmed Reiss Steamship Co. v. The Claremont, 80 F.(2d) 1017 (C.C.A.2); The Harding Highway, 53 F.(2d) 938 (C.C.A.3). But if the sagging of the tow was caused by suction created by the Clevelander's excessive speed, it would appear that her own fault was the proximate cause of the damage she suffered. The tow appears to have been following straight behind the tug when the latter was passed at a distance of 30 or 40 feet. Peterson thought everything all right up to that point, although he criticizes the tug for having continued in the middle of the channel instead of hauling over to the right. Not having started to haul over before the Clevelander got abreast, it is most improbable that the tug master would start to do so after she had passed. Nor does either of the witnesses say that he did. There is not a word of testimony to suggest that the tug at any time changed her course. The tow was in a straight reach of the canal, and without change of course by the tug, there is no reason to think that the tail of the tow would automatically sag over. The district judge made no finding that it did so. On the contrary, he found that the tow was sucked over by reason of the Clevelander's excessive speed. This is a reasonable inference. She traversed 2½ miles in thirty minutes, which means that she was running at her maximum canal speed for practically the entire distance. Peterson's testimony as to when he reduced speed is confused and unsatisfactory. He admitted a speed of 2½ miles per hour while passing. This was excessive under the circumstances and no adequate justification appears for not having reduced it further. We approve the finding that suction caused the tow to sag over; hence the fault of the tug cannot be predicated on this fact.

Her liability, if any, must rest upon the finding that tug and tow were substantially to their left of the center of the true channel. The true channel at the place in question is 200 feet wide. It is marked by buoys which are staggered on alternate sides of the channel. Because Buoy 270 had gotten out of place, the apparent edge of the channel at the place in question was 45 feet north of the true channel. As there was no buoy on the south side of the canal directly opposite Buoy 270, each master would reasonably determine the center of the channel at this point on the assumption that Buoy 270 marked its northern edge. The libelant strenuously contends

that even on that assumption the tug and tow were off-side. The tug was passed with 30 to 40 feet clearance and the beam of the Clevelander was 42½ feet, so that if the latter was then only 10 or 15 feet from the channel line as marked by Buoy 270, the tug was somewhat over the center of the supposed channel. But the assumption that the Clevelander was then only 15 feet from the edge of the supposed channel is not well founded. It was the final porting of her wheel to avoid the sag of the stern barge which took her within that distance of Buoy 270. How much further out she was when passing the tug does not appear, but Captain Comins says that before the tug was passed he walked over to the starboard side to see if Peterson was hugging the buoys too close and saw he was "nicely clear of them." Both witnesses repeatedly referred to the tug as in the middle of the channel, and the entry in the Clevelander's log merely notes that "Primrose and tow were keeping center of channel." We do not think, therefore, that there is substantial proof that the tug's course was less than 100 feet from the supposed channel line as marked by the misplaced buoy. Nor did the district judge so find. His conclusion was that the tug and tow were substantially over the middle of the true channel. With this we agree.

The statute provides (Canal Law N.Y. [7 McKinney's Consol.Laws c. 5] § 179) that: "The master of a float meeting another float, shall turn to the right, so as to be wholly on the right side of the center of the canal." The Primrose did not actually comply with this rule, but her failure to do so was neither intentional nor negligent. It may fairly be inferred that her master relied on the location of Buoy 270 and kept wholly on the right side of the center of the canal as thus marked. Peterson also relied on the buoy and believed that he had room to pass even though the tug was hugging the center of the channel. And apparently there would have been sufficient room except for the final porting of the Clevelander's wheel to avoid the barge drawn over by her suction. The respondent therefore argues that the tug's position was merely a condition, not a cause, of the accident. The Perseverance, 63 F.(2d) 788 (C.C.A.2); Long Island R. Co. v. Killien, 67 F. 365 (C.C.A.2). To which the libelant replies that being guilty of a statutory fault, the tug must prove that her violation could not have been a contributory cause of the disaster. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; The Luna, 63 F.(2d) 808 (C.C.A.2). But we are not convinced that the tug was proved to be guilty of a statutory fault. The case appears to be one of first impression with respect to the duty imposed by the statute when the channel is erroneously marked. We cannot believe it was intended to impose an absolute duty upon a navigator to ascertain the center of the true channel under such circumstances. Accordingly, we hold that the tug was without fault and that the libel should have been dismissed.

The decree is reversed, and the cause remanded, with directions to dismiss the libel.