## THE BELLEVILLE.
### THE SOCONY 19.
### No. 15.

Circuit Court of Appeals, Second Circuit.

Nov. 1, 1937.

Otto, Easterday & Warburton, of New York City (Henry E. Otto, of New York City, of counsel), for libelant.

Louis Mead Treadwell and Macklin, Brown, Lenahan & Speer, all of New York City (Paul Speer, of New York City, of counsel), for claimant.

Before MANTON, L. HAND, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

Both parties have appealed from a decree in the admiralty holding them severally at fault for a collision between their vessels at about eight o'clock in the evening of January 16, 1935, near the eastern entrance of the Kill van Kull. The libellant's steam lighter, "Belleville," while steaming east on the north side of the Kill, when off "Frenchmen's Dock" on the Jersey shore, made out the claimant's tug, "Socony No. 19," with two barges in tow, the "No. 98" on her right hand, and the "No. 122" on her left. This tow was then off the "Socony Vacuum" dock, about 2,000 feet away, and the lighter correctly understood that it was bound west into the Kill in spite of its showing only the tug's green light. The north shore of the Kill curves at this point, and the tow was under a right rudder, until she should straighten along the thread of the channel. As soon as the lighter made out the tow, she gave two blasts for a right to right passing, assuming that the tow would go further out into the center of the channel; she herself turned a little to the left towards the shore. The tug answered with two blasts and turned a little to the left so as to give a wider berth. It soon appeared, however, that there was not room to pass; the tug blew an alarm and backed; the lighter, apparently in panic, kept on at full speed under a hard right rudder, and swung across the bows of the tow, impaling herself

about amidships upon the protruding bow of the barge "No. 122." So far as we can judge, the actual point of contact was about 200 feet south of the buoy and somewhat to the west of it as well. The judge fixed a shorter distance, but it is very difficult to believe that the lighter could have swung ninety degrees in so small a compass. The tug's master gave various estimates, but probably was not more than fifty feet wrong when he said that at the collision the barge "No. 98" was 200 feet south of the copper Dock, which is about fifty feet north of the buoy. The judge found the lighter at fault, first, for keeping to the left side of the channel, in violation of the narrow channel rule; second, for not anticipating the tug's change of heading to the right as she rounded the buoy; and last, for swinging under a right rudder directly athwart the tug's course. He found the tug at fault for not giving the lighter a wider berth, when she had plenty of open water upon her left hand.

When the channel is straight, Rule I, Article 18 lays down the test for whether the meeting is head and head; when it is curved, that test does not apply and it becomes all the more imperative for each vessel to keep to its own side of the channel. But Rule I still governs their conduct whether the channel be straight or curved, and they may not pass right to right, if any change of helm is necessary. The Victory (The Plymothian), 168 U.S. 410, 419–421, 18 S.Ct. 149, 42 L.Ed. 519; The Arrow (C.C.A.2) 214 F. 743, 745; The Pekin [1897] App.Cas. 532. The projected courses of these vessels were not safely apart, right to right. The tow had been coming along only about 150 feet off the pier-ends; she must indeed have eased off somewhat at the buoy, but probably did not give it even that much berth. Naturally, she was showing her green light till she had swung; a fact which should not have misled the lighter as it did. The lighter, on the other hand, was certainly further off shore when she signalled, and if both vessels had kept their courses, they would have passed left to left; it would scarcely have been even a head and head passing. Instead of performing his duty, the lighter's master tried to force an illegal passing and began to execute it. That was a very serious fault. Perhaps realizing the difficulty of this position, and for that reason trying to show that the situation had been proper for a right to right passing, the lighter attributed to the tow a sheer which suddenly opened her red light. The judge found that there was no such sheer, and there is not the least antecedent reason for supposing that there was, for the tug had heard and answered the signal, and would have been mad to crowd over into the lighter's water. Moreover, the opening of the red light readily lent itself from the lighter's pilot house to the appearance of a sharp sheer to the right.

The proposal was quite enough to condemn the lighter without considering her antics when trouble arose; but the case against the tug is different. We have several times had before us the case of a vessel, meeting another head and head, which agrees to a wrongful proposal to pass right to right. Twice we excused her because of the emergency so forced upon her, which we could not say she failed to meet as best she could. The Cetus (C.C.A.) 202 F. 189; Lehigh Coal & Navigation Co. v. Compagnie Générale Transatlantique (C.C.A.) 12 F.(2d) 337. Probably The Comet No. 5 (C.C.A.) 42 F.(2d) 656, ought to be put in the same class, but we wrote no opinion and there may have been other grounds. In Southern Pac. Ry. Co. v. United States (C.C.A.) 72 F.(2d) 212, 214, on the other hand we held the assent to be a fault. It must be remembered that Rule I is peremptory; it gives no option, like the crossing rule; each vessel must put her rudder right, unless without change of helm they can safely pass right to right. Nothing but the strictest need will excuse such an assent; and there was no need here, for nothing prevented the tug from stopping and blowing an alarm. But we need not rest on that; for even if it had not been a fault to assent, the tug did not carry out her agreement properly, as the judge found. We have already discussed the place of the collision; it is, indeed, uncertain, but one thing is sure, that even after both vessels had done something to cooperate, both almost simultaneously concluded that there was danger of collision. The tow blew an alarm before the lighter put her rudder hard right; the lighter fell into a complete funk merely by the apparition of the tug's red light. These facts speak much louder than conclusions of distance from estimates made in the dark. There was not the slightest reason for pressing the lighter into so cramped a berth; the whole Kill lay on the tow's left hand, and she can suggest no reason for not using it except that she had already given

enough. The actions of both contradict that assertion.

Decree affirmed.