## THE HYGRADE NO. 2.

## THE THOMAS R. COYNE.

## THE CHIPPEWA.

### TANK BARGE HYGRADE, Inc., v. TUG THOMAS R. COYNE, Inc., et al.

### No. 15229.

District Court, E. D. New York.

Feb. 20, 1939.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libellant and the Chippewa.

Mahar & Mason, of New York City (William J. Mahar, of New York City, of counsel), for the Thomas R. Coyne.

GALSTON, District Judge.

This is a canal collision case. The barge Hygrade No. 2, owned by the libellant, was in tow of the tug Chippewa, being pushed by the said tug eastward bound in the Erie Canal. As they approached Lock No. 9, which is in the Mohawk River, on April 24, 1936, at night, a collision occurred between the Hygrade No. 2 and the barge L. J. Tomlinson, which was in tow of and being pushed by the tug Thomas R. Coyne. The Coyne with its barge was bound west. The collision occurred about 1000 feet from Lock No. 9 and close to the north bank. Each tug ascribes fault to the other. The libellant contends that the Coyne failed to go sufficiently to its own port and failed to take into consideration that the Chippewa had the current under foot and that the set of the current was from the north bank. On the other hand the Coyne contends that the collision was caused by a radical change in course of the Chippewa.

The mate in charge of the Chippewa said that he blew three whistles for the lock as he approached Lock No. 9, which is a signal to the lock operator of the approach. At that time the Chippewa was proceeding

---

[1] No opinion for publication.

on one bell. At that time he observed the Coyne tow at the lock and accordingly stopped and drifted to a point about 1000 feet distant from the lock. Then, as Munnelly described his maneuvering, he backed and stopped and then went ahead and continued to drift, then blew two whistles for a starboard to starboard passing.

The lock is on the north side of the Canal and is only 45 feet wide. Vessels approaching from the west customarily had to make the north side in order to pass through the lock. Munnelly said that with the current under foot and setting to the eastward, he was unable even by stopping his engines to keep his tug at a complete standstill, and had to give "a turn ahead and then go back on her and check that with the speed—when I gave her a turn I had to go back on the vessel again and check it and let her drift at intervals." As the other tow approached he observed the red and green light of the barge and the green light of the tug, but not the red light which apparently was obscured by the cabin of the Tomlinson. According to Munnelly, the Coyne tow came on straight ahead until the two were close together, at which time he thought that the Coyne and her tow would clear by about 15 feet. His deck hand at that time called to him "to go back on the tug" and accordingly he reversed and hooked up full speed astern, but the two starboard corners of the barges came into contact. Munnelly placed the collision on the northerly side of the channel, near the bank, in line with the lock wall.

Before the local inspectors Munnelly had testified: "Probably we would have cleared his bow if this mate[1] let me go— if I hadn't done what he said. If I took it on my own. It is a big barge. You are away behind it and you cannot see very good." He admitted that on a line with the lock wall, at a distance of 1000 feet west from the lock, there was sufficient water to the north, or his port hand. He also said before the local inspectors that he had stopped five or ten minutes after sighting the Coyne before the collision. There was some confusion in his testimony as to where, to port or starboard, in his maneuvering he contended that he "kicked her ahead". The carrying out of the order "full speed astern" would cause the bow of the tow to swing to starboard.

It appears clear that the Coyne had proceeded at least 875 feet to the point of collision from the time that she first sighted the Chippewa, and that the Chippewa did not at best move more than about 125 feet in the same time. The Coyne placed the point of collision about 150 feet south of the sunken boats in the vicinity of the approach wall.

The channel is approximately 500 feet wide from bank to bank and the water is navigable for vessels drawing nine feet. Now although the channel is 500 feet wide the collision occurred on the northerly half, The Coyne also had blown a two whistle signal and, according to Ruben Coyne, if the Chippewa had not taken a sheer the vessels would have passed with a clearance of about 25 feet. Coyne admitted that he did not put his wheel hard over until he saw the Chippewa take a sheer.

When the boats collided it was found that the starboard corner of the barge Tomlinson came in contact with the starboard bow corner of the Hygrade at a point about 10 feet in from the said starboard bow corner. The conclusion is fairly clear that at the time of the collision the Coyne was heading somewhat to her port and the Chippewa somewhat to her starboard, but both vessels appear to have been at fault. Munnelly, as he seemed to admit, should not have reversed his engines and should not have been satisfied with a clearance of a mere 15 feet. On the other hand, the fault of the Coyne is clear. She had more than sufficient water on her port side to give the Chippewa ample clearance. The Belleville, Socony 19, 2 Cir., 92 F.2d 433; The Socony 19, New York Marine No. 3, 2 Cir., 29 F.2d 20; Ocean S. S. Co. v. United States, S. 51, City of Rome, 2 Cir., 38 F. 2d 782.

The libel will be sustained as against both tugs. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

[1] I understand the reference to be the mate of the Hygrade.