### THE FIDELITY.

### THE CROW.

### TANKER HYGRADE NO. 10, Inc., v. THE FIDELITY et al.

District Court, S. D. New York.

Feb. 7, 1942.

Foley & Martin, of New York City (Christopher Heckman, of New York City, of counsel), for libellant.

Dow, McAllister & Symmers, of New York City (Wilbur E. Dow, Jr., of New York City), for claimant-respondent.

RIFKIND, District Judge.

Between midnight and dawn of November 29, 1938, the Tanker Hygrade, in tow of the tug Crow, stranded alongside buoy No. N-76 on the east side of the Hudson River, near Van Wies Point. For the damage caused to the tanker the libellant seeks to impose liability on the tug Fidelity. It is charged that the Fidelity crowded the Crow and the Hygrade out of the channel. The libellant places the time of the stranding at 5:30 A.M. The claimant asserts that at 5:30 A.M. the Fidelity was many miles below buoy No. N-76 and that it could not, therefore, have been guilty of the misconduct alleged.

There is ample evidence, well corroborated, that the stranding did occur at 5:30 A.M. The evidence is equally persuasive that the Fidelity had passed the point of the stranding more than three hours earlier. But the normal inference of mistaken

identity becomes exceedingly speculative in the light of testimony by disinterested witnesses called by claimant that the Fidelity did pass the Crow and Hygrade at buoy No. N-76 but that the passage occurred at 2 A.M. and that it was entirely uneventful. To fit this testimony into the pattern of events we would have to assume the highly improbable pair of coincidences that at 2 A.M. when the Fidelity was at buoy No. N-76 it passed a tug and tanker which resembled the Crow· and Hygrade combination in all respects and that at 5:30 when the Crow and Hygrade were at N-76 they passed a flotilla which resembled the Fidelity and its eight barge tow in all respects. The mind is repelled from the acceptance of such a multiplicity of coincidences. The Fidelity's tow was composed of eight barges, four laden, four light. The Hygrade was being towed by the tugboat Crow, push-boat fashion. The Crow was northbound, the Fidelity southbound. The duplication of all these conditions at the same point of the river but three hours apart puts too great a strain on the imagination. The Valley of the Hudson has long been known as the favorite abode of spirits and phantoms and apparently on the night in question the denizens of the world of fancy were out in full force. It would be easier to accept these coincidences if one shared Samuel Coleridge's faith that "With never a whisper in the Sea Oft darts the Specter-Ship".

■ Nor is there anything in the testimony which would make libellant's story any more credible than the claimant's. Both are well corroborated at least as to the time when the respective critical events occurred. Both are surrounded by circumstantial data which lend credence to the version. Whatever mystery may lie beneath these fantastic occurrences it seems clear that the libellant who has the burden of proof has failed to sustain it. ˙ Where the mind remains mystified it is not persuaded and the loss must lie where it falls. Commercial Molasses Corp. v. New York Tank Barge Corp. November 17, 1941, 62 S.Ct. 156, 86 L.Ed ——.

The libellant, however, contends that this does not dispose of the issues in the case. He asserts that the claimant is precluded from challenging the allegation that the Crow and the Fidelity did pass each other at the time of the stranding of the Hygrade because it is admitted in the pleadings. The alleged admission occurs not in the answer to the libel but in the claimant's petition impleading the Crow. That petition contains the following allegation:

"Fourth. That on or ˙about the 29th day of November, 1938, the Tug Fidelity with a hawser tow of eight barges, two abreast, was navigating the Hudson River bound from Albany to New York. When in the vicinity of Van Wies Point, New York, the Tug Fidelity observed the Diesel Tug Crow with the loaded Tank Barge Hygrade No. 10 bound north. While said tugs passed port to port, the Tug Crow maneuvered in such a. fashion that it caused its tow, Tanker Hygrade No. 10, to swing to starboard and in so swinging to the right, grounded on the east side of the river."

■ It is urged by claimant that this is not an admission since the petition is not a pleading as between the libellant and the claimant but is designed to bring in a third party; citing, The Milwaukee Bridge, D.C. S.D.N.Y. 1922, 291 F. 711.

That seems to me to be too narrow a view and is not supported by the authority cited. It is also urged by claimant that the language of Article Fourth should be construed thus:

"We deny that we passed you, but we were in the river on that day and if we did pass you, we didn't do what you said we did, but the tug Crow caused the damage".

■■ The answer to this contention is. that no such subjunctives were used in the petition. Cf. The Milwaukee Bridge, supra. Nor is this a case where the pleadings may be deemed conformed to the proof. That relief may be granted where no prejudice results therefrom. O'Connor, Harrison &: Co. v. Klingel, 9 Cir., 1926, 16 F.2d 460.

Here, however, it is very clear that libellant had every reason to expect that the fact of the meeting of the two flotillas. at or about the time of stranding would. not be put in issue. The surprise was manifest. Injury to libellant likewise cannot be doubted in view of the lapse of time.

For these reasons, however inconsistent the fact may be with the oral testimony, I treat it as admitted for purposes of this. trial that the Fidelity and the Crow did meet and pass in the vicinity of Van Wies. Point at or about the time of the grounding of the Hygrade. We must, therefore, proceed to the consideration of the evidence on the question of fault.

The chief fault assigned by the libellant to the Fidelity is that she violated the narrow channel rule and did not keep to the right of mid-channel, 33 U.S.C.A. § 210. If we accept the wider of the two dimensions given for the channel, it is 400 feet. The mate of the Crow testified that at the point of passage the Hygrade was 75 feet from the east line of the channel and 75 feet from the Fidelity. The Hygrade itself was 40 feet in beam making the total distance from the Fidelity to the east end of the channel 190 feet or 10 feet inside the wrong half of the channel. On cross examination he stated that the Fidelity "was in the middle of the channel at the time when I started passing her". Anna Kiernan, a disinterested witness who had good opportunity to observe, testified that the two flotillas passed at a distance of 100 feet. That would put the Fidelity in the proper side of the channel. Furthermore, we must take into consideration that these measurements are estimates made during the dark of night. I find that the claimant did not violate the narrow channel rule. The Clevelander, 2 Cir., 1936, 83 F. 2d 947.

It is clear that when the Hygrade passed the Fidelity there was a safe interval between them and there was ample water on the Hygrade's starboard, in the judgment of the Crow's navigator, since no signals were given by him indicating apprehension on his part of any danger. It is claimed, however, that after the Fidelity passed, its tow started to swing over toward the Hygrade so that despite the Crow's maneuver to starboard only 6 feet separated the Hygrade and the last tier of barges. This would indicate a degree of speed in the swinging tow which is inherently incredible. Furthermore, the absence of any sign of commotion, alarm or disturbance on board the Crow or Hygrade, in the presence of such imminent danger, when considered in the light of the explosive character of the tanker's cargo of 15 thousand barrels of oil, can point only to the inference that the proximity of the barge has been grossly exaggerated or that for other reasons the prospect was one of safety and not of danger. Cf. M. & J. Tracy, Inc., v. Payne, D.C.S.D.N.Y.1923, 4 F.2d 158. In that case the court said:

"The fact that there was no exchange of signals when the unidentified tug was passing is evidence that nobody then anticipated any danger and that there was water enough to pass safely port to port. I attach no weight whatever to the estimate of distance of 100 feet from the Staten Island shore made by the master of the Cape Sable".

In substance the libellant has failed to prove negligence in the Fidelity's navigation. Such negligence is a necessary ingredient of the libellant's case. So it was held in The Clevelander, supra, [83 F. 2d 948], where the court said:

"If the sagging of the tow which necessitated such change to starboard was *due to faulty navigation by the tug,* the latter must be held liable for crowding the Clevelander out of her course, even though there was no collision with the steam barge [citations]". (Emphasis supplied.)

The direct cause of the injury to Hygrade has likewise been left shrouded in mystery. After the grounding, the buoy was still on the Hygrade's starboard. If the buoy was properly placed the Hygrade should then have been in 27 feet of water. Her draft was 10 feet. It has been suggested that she fetched up on the buoy anchor. But the testimony is that the anchor is a 6 foot block of concrete. There should, therefore, still have been 11 feet of water under the tanker's keel. Libellant took no soundings, though the stranding lasted two hours, and made no overside examination of any kind to determine the cause of the mishap. While it is true that the precise character of the underwater obstacle need not be established if it is proved that the complaining vessel was crowded out of her course by the negligent navigation of a passing vessel, nevertheless the fact that both navigators regarded the Hygrade's location as safe accompanied by absence of explanation of the source of the danger tends to confirm the lack of negligence on respondent's part.

I find, therefore, that it has not been established that the Hygrade's damage was attributable to the fault of the Fidelity and the libel must, therefore, be dismissed. Findings of fact and conclusions of law have been prepared and signed.