Beverly M. GARY, Appellee,

v.

U. S. OIL SCREW ECHO, her engines, tackle, furnishings, etc., in rem, and Charles Alligood, her owner, in personam, Appellants.

No. 9328.

United States Court of Appeals
Fourth Circuit.

Argued April 24, 1964.

Decided June 15, 1964.

George H. McNeill, Morehead City, N. C., and George Rountree, Jr., Wilmington, N. C., for appellants.

C. R. Wheatly, Jr., Beaufort, N. C., for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and CRAVEN, District Judge.

CRAVEN, District Judge.

U. S. Oil Screw Echo and her owner, Charles Alligood, appeal from a decree of the district court adjudging Echo solely responsible for collision damage to yacht Beverly. Echo was not damaged. The vessels were meeting in a narrow channel. The collision occurred at 6:00 P.M. on October 15, 1956. Darkness had overtaken the Beverly, a thirty-three foot Chris-Craft, as she proceeded southwardly in the inland waterway about two and a half miles north of Beaufort and Morehead City, North Carolina. Mr. and Mrs. A. H. Marshall, parents of the owner of Beverly and the only persons aboard, had not intended to be under way at night. It was Mr. Marshall's seventh trip to Florida via the inland waterway, but neither he nor Mrs. Marshall were experienced in nighttime navigation, and sought to avoid it. Their planned speed was cut in half because of a northeaster in the Neuse River. Otherwise, they would have made Beaufort before dark.

Shortly before the collision the Marshalls were studying their chart with the aid of a flashlight trying to locate their position. Beverly was equipped with radio and searchlight, but neither was used. Lost, unaware of where they were going and fearful of running into a bank, the Marshalls kept on at a steady speed of five to six land miles per hour. They never saw any lights other than what they thought to be the lights of Beaufort, and never saw the Echo until it was upon them. Both were standing on the port side of Beverly at time of impact. Perhaps instinctively, in the last seconds remaining, Mr. Marshall turned Beverly hard to port so that she took the bow of Echo into her starboard side.

At moment of impact, the Beverly was, in Mr. Marshall's own words, "definitely way over on the wrong side of the channel."

Echo, a fifty foot shrimp trawler, was owned and operated by Charles Alligood, assisted by Joseph Davis. She was bound north to the mouth of Adams Creek—intending to fish for shrimp the next morning. Her speed was slightly faster than that of Beverly—about six to eight land miles per hour. With the Beaufort lights behind her, visibility was good enough so that Alligood had Beverly under observation for as long as eight to ten or maybe even fifteen minutes before collision. He knew he was meeting Beverly in a narrow two hundred foot channel, and expected to pass her within twenty-five yards. Echo hugged the starboard (east) side of the channel. Her master erroneously deemed that a sufficient precaution and failed to give one blast of her whistle as required by Rule 1. 33 U.S.C.A. § 203.

## I.

Initially, libellant Beverly M. Gary, owner of Beverly, asserts that this court is without jurisdiction to consider the merits of the decision below. Although plausibly presented, the plea in bar is without merit.

On November 20, 1963, the district judge filed his findings of fact and conclusions of law, coupled with an opinion. The entire paper writing was inadvertently entitled "Opinion and Decree". Also, near the end of the opinion appear the words "Decree for Libellant". On December 5, libellant Gary submitted proposed interlocutory decree "in compliance with opinion filed in this cause."

Clearly, counsel interpreted the words "Decree for Libellant" in the opinion of the court dated November 20, 1963, as meaning the routine invitation to prevailing counsel to submit an appropriate decree in accordance with the opinion. We agree with that interpretation. On December 9, the district court entered the interlocutory decree proposed by libellant referring to its opinion of November 20, and on December 11, 1963, Echo and her owner gave notice of appeal within the fifteen day period permitted by 28 U.S.C.A. § 2107.

██ We hold that the only decree entered is that one designated "Interlocutory Decree" as of the 9th day of December, 1963. There would have been no occasion for the entry of the interlocutory decree of December 9 if the opinion of the court of November 20 had been considered by the district court and the parties to be an interlocutory judgment. The viewpoint and conduct of counsel below and of the district court, although not binding upon us, is certainly persuasive that the opinion of Judge Larkins of November 20 is that and nothing more. The word *decree* appeared in it ambiguously, but counsel correctly resolved the ambiguity. The purported first appeal by Echo on December 6 was premature and served merely to underscore the confusion of all concerned.

## II.

█ We agree with the conclusion of the district court that the failure of the Echo to give a short and distinct blast when the vessels were meeting head and head in such manner as to involve risk of collision in a narrow channel constituted a statutory fault.

█ Echo's master saw Beverly's red *and* green lights until he lost the green light at a distance of one hundred or a hundred and fifty yards from Beverly. Echo correctly urges that Rule 1 had no application at night unless each vessel is "in such a position as to see both the side-

lights of the other." But the proviso in the Rule is not an invitation to wait until the last possible moment on the chance of a whistle blast becoming unnecessary. Long before he lost the green light, the master of Echo should have sounded one short and distinct blast of the whistle because the vessels were approaching each other nearly end on, and the statute so requires.

█ Like the tug in Esso Standard Oil Co. v. Oil Screw Tug Maluco I and Barge #127, 4 Cir., 332 F.2d 211, Echo asks what more was required to avoid collision, inasmuch as she was already hugging the right bank. The answer has just been manifested: one short blast of the whistle given far enough away to afford time to Beverly to heed the admonition. Correctly, the district court invoked the Pennsylvania rule. S. S. Pennsylvania v. Troop, 19 Wall. 125, 22 L.Ed. 148 (1874). To escape liability for her dereliction Echo "must acquit herself of every reasonable possibility of contribution to the misfortune." Esso Standard Oil Co. v. Oil Screw Tug Maluco I and Barge #127, supra. Echo failed to show that her failure to blow her whistle could not have contributed to causing the collision. The district court thought it *did* contribute and adjudged her liable. In this aspect of the case we find no error.

## III.

In its opinion and findings of fact dated November 20, 1963, the district court found that: "Unknown to Marshall and his wife, the Beverly had veered into the east side of the channel, i. e., the Marshalls' port side." Erroneously, we think, the district court applied the Major-Minor Rule [1] and exculpated Beverly. The quoted finding of fact establishes a clear violation of the Narrow Channel Rule, Article 25 of Inland Rules of Navigation,[2] 33 U.S.C. § 210:

> "In narrow channels every steam vessel shall, when it is safe and prac-

---

1. See footnote 11 in Boyer v. The Merry Queen, 202 F.2d 575 (3d Cir. 1953), for an interesting criticism of the Rule.

2. Small pleasure boats such as Beverly are subject to these Rules. 12 Am.Jur.2d "Boats & Boating" Sections 14, 32, 33.

ticable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

This violation is not a minor or trivial fault. Neither the Marshalls' inexperience in night navigation or the fact they were lost excuses the statutory fault. There is lacking here even the plausible excuse offered unavailingly by the tanker in Esso Standard Oil Co. v. Oil Screw Tug Maluco I and Barge #127, supra. There is no doubt with regard to the mismanagement of the Beverly. Unlike The Barbara, 62 F.Supp. 265 (D.C. Mass.1945), there was *not* ample room for the Echo to move farther to its starboard side and thus pass port to port: Echo was as far to starboard as it could go. Nor was Echo's failure to whistle so "foolhardy and inexplicable" that it could not have been anticipated—as was the situation in Webb v. Davis, 236 F.2d 90 (4th Cir. 1956).

Beverly's proceeding on the wrong side of the channel was a cause, not a condition, of the collision. Esso Standard Oil Co. v. Oil Screw Tug Maluco I and Barge #127, supra; Matton Oil Transfer Co. v. The Greene, 129 F.2d 618 (2d Cir. 1942).

Echo persuasively urges that Beverly was guilty of other serious defaults contributing to the collision. The district judge made no finding of fact with respect to whether Echo's running lights were burning other than to note that the evidence was in sharp dispute. He did find that Mr. Marshall in the Beverly observed no approaching vessels. Probably, Beverly was guilty of failure to keep a proper lookout. It is not necessary to decide. Beverly's undisputed violation of the Narrow Channel Rule affords sufficient rationale for joint liability and division of damages, and it will be so ordered.

Sustained as to liability of Echo and owner.

Reversed as to liability of Beverly M. Gary.

Affirmed in part and reversed in part.