MATTON OIL TRANSFER CORPORA-
TION v. THE GREENE, et al.
THE JEMSON NO I.
THE CHOCTAW.

Nos. 273, 274.

Circuit Court of Appeals, Second Circuit.
July 7, 1942.

Foley & Martin, of New York City (Christopher E. Heckman and James A. Martin, both of New York City, of counsel), for appellant.

Purdy & Lamb, of New York City (Edmund F. Lamb and Vincent A. Catoggio, Jr., both of New York City, of counsel), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation concerns a collision which occurred in the Kills off Mariners Harbor, S. I., between the oil barge Jemson No. 1, and the motor tanker Greene; damage resulted to both vessels. McAllister Tankers Co., Inc., owner of the tanker, filed a libel against the tug Choctaw which had the oil barge in tow. Matton Oil Transfer Corporation, owner of the barge, brought a suit against the Greene, in which the tug was impleaded. The two cases were tried together, and a single opinion was rendered holding both the tug and the tanker at fault. The claimant of the tug, Motor Tug Choctaw, Inc., has alone appealed.

The facts as found by the district court may be summarized as follows: On the evening of January 25, 1940, the tug Choctaw, with the oil barge made fast on her starboard side, was proceeding westerly in the Kills bound from Bayonne to Sewaren; the tug was displaying regulation navigating lights and the barge had a proper white light on her starboard forward corner. The night was clear, there was no wind and, with the flood tide underfoot, the tug was making somewhat more than three miles an hour. She was favoring the Staten Island shore and passed within 25 or 30 feet of channel buoy 3A on the southerly side of the channel, which is about 400 feet wide. When about abreast of this buoy, she observed the Greene proceeding eastward around the bend of Shooters Island. Her speed was 8 to 10 miles an hour. The Greene was on her left-hand side of the channel and the vessels were in position to pass starboard to starboard with a clearance of at least 150 feet, had the Greene continued on her course; but at a distance of about 300 feet from the Choctaw the tanker took a sharp swing toward Staten Island, shutting out her green light and showing only her red. Alarms were sounded by both vessels and the tug's engines were reversed which tended to pull her tow to port. The Greene continued her swing at full speed, hoping to pass in front of the tug, but the bow of the barge, which extended 150 feet beyond the bow of the Choctaw, side-swiped the port side of the tanker. The collision occurred nearly abreast of buoy 5 on the southerly side of the channel. At the time the Choctaw sighted the Greene there was another tug, the Sarah, with a dump scow on her port side, proceeding westerly through the Kills. She had been passed by the Choctaw and was a short distance eastward of the latter. There was also the tug John R. Williams, without tow, about abreast of the Choctaw. Both the Sarah and the Williams were on their own starboard side of the channel. They approached the Greene substantially head and head and intended to pass to port of her. Their masters corroborated the Choctaw's testimony as to the tanker's sharp swing to her right. The Greene's deckhand was in the pilot house with her master; he made no report of any lights. No lookout was stationed forward. The

master testified that he saw the red and green lights of a tug, which appeared to have a tow on her port side, and sounded a one-blast signal, although none of the navigators of the three approaching vessels heard it. The court found that the tow he saw was not the Choctaw and that the one-blast signal was not intended for the Choctaw. The Greene was held at fault for proceeding on the wrong side of the channel, failing to keep a proper lookout, and failing to observe that there were three and not merely one tug in the channel ahead of her. She has not appealed. The faults ascribed to the Choctaw were violation of the narrow channel rule and failure to sound a passing signal to the Greene. Her appeal presents the claim that she should have been exonerated.

In our opinion her appeal must fail. She was proceeding on the wrong side of a narrow channel in violation of Article 25 of the Inland Rules, 33 U.S.C.A. § 210. For this statutory fault she must be held responsible unless she proved that it could not have contributed to the collision. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; Lie v. San Francisco & P. S. S. Co., 243 U.S. 291, 37 S.Ct. 270, 61 L.Ed. 726. While recognizing this principle, we have often exonerated vessels out of position when it has appeared that "the * * * fault was a condition, not a cause, of the collision." The Socony No. 19, 2 Cir., 29 F.2d 20, 22; The Clara, 2 Cir., 55 F. 1021; The Perseverance, 2 Cir., 63 F.2d 788; The Syosset, 2 Cir., 71 F.2d 666; The Bellhaven, 2 Cir., 72 F.2d 206; Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009. As explained in these opinions the quoted phrase means that if the vessel offending against the narrow channel rule was visible to the other vessel and her unlawful position did not impede the other's navigation, and if by proper navigation the other could have avoided the collision, then the offender's fault did not contribute. In reliance upon these cases the appellant contends that her presence on the wrong side of the channel was not a contributing cause, and points to findings of fact to the effect that the Greene and the Choctaw were in a position to pass starboard to starboard with a clearance of 150 to 200 feet, had the Greene continued on her course; and that the lights of the Choctaw and her tow were visible to the Greene in ample time for her to have navigated safely past the Choctaw, and the latter's presence on the left side of the channel did not embarrass the navigation of the Greene. The district judge analyzed the facts in an opinion; his findings of fact were made several weeks later. We find nothing in the opinion to suggest that the presence of the Choctaw would not have embarrassed the navigation of the Greene had she observed her; and there is nothing in the evidence to support such a finding. The Greene was meeting not only the Choctaw but also the tug John R. Williams and the tug Sarah with her tow. Her position with respect to the two tugs was "head and head," so that she was bound to turn to starboard to make a port to port passage with them. See Art. 18, 33 U.S.C.A. § 203. How far she would have had to turn out to pass these tugs and how close that would have brought her to the Choctaw was not developed in the evidence nor discussed in the opinion. That it was impossible for her to maintain the course she was on when sighted by the Choctaw and that her navigation would have been made more difficult by the position of the Choctaw had she tried to pass between the latter and the tugs seems self-evident. Whether it would have been possible for her so to navigate had she observed the Choctaw in time has not been proven. The burden of proving it lay upon the Choctaw, if she would escape responsibility for her violation of the narrow channel rule. Having failed to carry this burden, she cannot successfully urge that her violation was not a contributing cause of the collision.

The appellant contends also that the district court erred in holding the Choctaw at fault for failing to sound a passing signal to the Greene. We said in The Bellhaven, 2 Cir., 72 F.2d 206, at page 207 that "If the vessels are in position to pass starboard to starboard, the rule does not require an assent to the proposal so to pass; they must do so." See also Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009, 1011. Whether the Choctaw would have been at fault in not sounding a passing signal to the Greene, if there had been no other vessels in the vicinity, we need not determine. The Choctaw knew of the presence of the Sarah, which she had recently overtaken and passed, and probably knew of the presence of the tug, which was almost abreast; she is chargeable with knowledge that the Greene was obligated to pass them to port

and would have to change her course to do so; whether the Greene would attempt to pass between the Choctaw and the tugs or would shape her course so as to leave all three of the on-coming vessels on her port side, the Choctaw could only surmise. Since she was uncertain of the Greene's course, we think it was a fault to sound neither a passing signal nor an alarm. See Henry Du Bois Sons Co. v. A/S Ivarans Rederi, 2 Cir., 116 F.2d 492, 494. Had this been done the inattentive Greene might well have discovered the Choctaw in time to avoid collision.

Decree affirmed.