**BOUCHARD TRANSPORTATION CO., INC., as Operators and B NO. 95 Corporation, as owner of the BARGE B NO. 95, Plaintiffs,**

v.

**MORAN TOWING & TRANSPORTATION CO., INC. and the TUG JUDY MORAN, her engines, tackle, etc., Defendants and Third-Party Plaintiffs,**

and

**United States of America, Third-Party Defendant.**

**No. 74 Civ. 325.**

United States District Court, S. D. New York.

March 9, 1977.

Burlingham Underwood & Lord, New York City, for Moran Towing & Transportation Co., Inc.; Kenneth H. Volk, Nicholas H. Cobbs, New York City, of counsel.

Robert D. Fiske, Jr., U. S. Atty., S. D. N. Y., Gilbert S. Fleischer, New York City,

Atty. in Charge, Admiralty & Shipping Section, U. S. Dept. of Justice, New York City, for United States; Janis G. Schulmeisters, Trial Atty., New York City.

## OPINION

BONSAL, District Judge.

This is an admiralty action tried to the Court arising out of the grounding of an oil barge ("Barge B No. 95") which was being push towed by the tug JUDY MORAN north up the Hudson River on the evening of October 17–18, 1973. The defendants and third-party plaintiffs, Moran Towing & Transportation Co., Inc. and the tug JUDY MORAN (hereinafter collectively referred to as "Moran"), settled with the plaintiffs in damages and have now brought this third-party action against the United States claiming that the grounding was occasioned by Buoy 35 being off station by some 50 feet and for other reasons hereinafter discussed.

According to the testimony at trial, the tug JUDY MORAN and Barge B No. 95 (hereinafter collectively referred to as "the flotilla") were proceeding north up the Hudson River in the vicinity of Buoy 35 which was located on the west side of the channel. The grounding occurred east of the channel and apparently was occasioned when Barge B No. 95 struck the remains of an old lighthouse. Shortly before the grounding, the flotilla passed a self-propelled tank barge, the MORANIA 300 (hereinafter "MORANIA") which was proceeding south down river. The passing was made port to port at about the location of Buoy 35.

### Factual Background

It is undisputed that Buoy 35 was off station some 50 feet east of the channel's westerly edge at the time of the grounding. Robert L. Maynard, captain of the JUDY MORAN, testified that on the evening of October 17–18, 1973 he was steering a course of 005° north between Buoy 30 and Buoy 35 with Houghtaling Dike Light, No. 36, dead ahead. He also testified that he changed the course left to 355° as he came abeam of Buoy 35 and steered for Light 40 on the east side of the channel and to the west of Houghtaling Island. Shortly thereafter, the grounding occurred some 900 feet south of Houghtaling Dike Light, No. 36.

Captain John Aitken of the Pilots Association of the Hudson River testified for third-party plaintiff Moran that Buoy 35 is often used as a guide in making a turn or change of course in the Hudson River and that the position of this Buoy is therefore important. Captain Aitken also testified as to the use of navigation charts and the function of the gyrocompass in maintaining a ship's course in the Hudson River.

The Government called Captain Thomas Sullivan, a Hudson River pilot, who testified that passing in the vicinity of Buoy 35 is not generally recommended because there is a bend in the River and the channel narrows at that point and that, in his opinion, a better area for passing would be in the straight-away off Stuyvesant Anchorage south of Buoy 35.

Numerous exhibits and the deposition testimony of several witnesses were also received into evidence at the conclusion of the trial.

### Discussion

Moran contends that the Government is liable for damages caused by the grounding because (1) the Coast Guard failed to maintain Buoy 35 on station properly; (2) the Coast Guard failed to mark the position of the hazardous underwater obstruction, the so-called "rock pinnacle", with a buoy or other warning signal; (3) the Marine Chart Division of the Department of Commerce neglected to insert proper notations for this hazard on the only chart available for the area; (4) the Chart Division failed to produce a chart with a scale large enough to permit the navigator to obtain an accurate determination of his position in the channel; and (5) the Coast Guard failed to maintain a range on Reach 23, the area of the grounding, so as to enable navigators visually to confirm their position on the Hudson River.

At the trial, Captain Maynard testified that before passing the MORANIA the flotilla was proceeding on a straight course of 355°, within a degree, heading for Light 40 on Houghtaling Island with Light 32 under its stern. (Transcript at 66–67, 76–77) (hereinafter "Tr."). In addition, Maynard testified that his searchlight was on the black can buoy on the port bow which was Buoy 39 off Matthews Point. (Tr. at 79). Maynard also testified that he did not change courses between the time of the passing of the MORANIA and the grounding of Barge B No. 95. (Tr. at 79–80).

From the evidence produced at trial, it appears that the flotilla had already passed Buoy 35 at the time of the grounding and that Captain Maynard was no longer navigating with any reference to Buoy 35. Surveys were made of the channel following the grounding, but no obstructions were found. (*See* Deposition Testimony of Herbert S. Wright, dated January 23, 1975, Exhibit 23 at 15–17; Deposition Testimony of Raymond F. Weidman, dated May 13, 1975, Exhibit 28 at 55–56). Surveys were then made immediately outside and to the east of the channel line which revealed a sounding of some 17 feet in the area of the grounding near the remains of the old Bug Island Light. *See* Exhibit 24, position "C".

 The plaintiff has the burden of proving that the alleged "fault" of the defendant was the cause of the grounding and not merely a condition. *See The Socony No. 19*, 29 F.2d 20, 22 (2d Cir. 1928); *The Perseverance*, 63 F.2d 788 (2d Cir. 1933); *The Syosset*, 71 F.2d 666 (2d Cir. 1934); *Matton Oil Transfer Corp. v. The Greene*, 129 F.2d 618 (2d Cir. 1942); *see also* Gilmore & Black, *The Law of Admiralty* 494 (2d ed. 1975).

Here, Captain Maynard testified that he was navigating in the channel at all times. In addition, the captain of the MORANIA, Bjorn Roal Eliassen, testified that the flotilla appeared to be in good position. (*See* Deposition Testimony of Bjorn Roal Eliassen, dated May 1, 1974, Exhibit 9 at 10–11). Nevertheless, the channel was found to be clear following the grounding, and the only low spots appeared to be some 100 feet outside the channel's easterly line and above the station of Buoy 35 which is where the grounding occurred.

 While the Government, through the Coast Guard, is responsible for the location and maintenance of buoys; and navigators, absent some suspicious circumstance or notice, are entitled to rely upon the representations made in the Government charts relative to the location of the buoys, *see The Clevelander*, 83 F.2d 947, 949 (2d Cir. 1936); *Trinidad Corp. v. S. S. Sister Katingo*, 280 F.Supp. 976, 977 (S.D.N.Y.1967), it appears that in order to establish a prima facie case, the plaintiff must prove that the negligence or failure of the Government to maintain the charted position of the buoy was the proximate cause of the grounding. *Afran Transport Co. v. United States*, 435 F.2d 213, 219 (2d Cir. 1970), *cert. denied*, 404 U.S. 872, 92 S.Ct. 72, 30 L.Ed.2d 116 (1971).

Here there was evidence that prior to the grounding Captain Maynard was taking a bearing on fixed Light 40 on Houghtaling Island with fixed Light 32 under his stern. Under these circumstances, it would appear that Captain Maynard's use of Buoy 35 was minimal or, at best, was used merely to alter his course towards Light 40. In addition, there was testimony that Buoy 35 was out of the sight of Captain Maynard during the port-to-port passing with the MORANIA so that the buoy was of no assistance in navigating at that time.

Captain Maynard was a licensed pilot but he was not a licensed Hudson River pilot. Captain Maynard testified that he had navigated the Hudson River hundreds of times since 1936 and that he was familiar with its passages, including the area of the grounding. However, according to the testimony of Captain Sullivan, the Hudson River channel narrows south of Buoy 35 because of a bend in the River and is therefore a poor place for ships to pass.

There also appears to be some inconsistencies between Captain Maynard's testimony on the course of the flotilla and his statement that he was in the channel at all times. According to his testimony at trial,

the flotilla was on a course of 005° as it passed within 150–200 feet of Buoy 34 before reaching Buoy 35 and that it remained on this course until it passed the MORANIA at the location of Buoy 35. However, according to the evidence produced at trial, such a course would place the flotilla outside and east of the channel and into the area of the "rock pinnacle" as it came abeam of Buoy 35. See Exhibit 27; Annex B attached to Defendant's post trial brief.

Since the grounding of the flotilla was occasioned by the remains of an old lighthouse located some 100 feet outside of the easterly edge of the channel, the station of Buoy 35 does not appear to have been the proximate cause or even a contributing cause of the grounding. See The Socony No. 19, supra; The Perseverance, supra; Matton Oil Transfer Corp. v. The Greene, supra.

■ Captain Maynard testified that he had navigated the Hudson River hundreds of times without a large scale chart. Therefore, it does not appear that the Government's failure to provide a larger scale chart of the area or its failure to mark the so-called "rock pinnacle" where the grounding occurred contributed to the grounding. The Government is not obliged to undertake to mark all potential hazards in navigation but only to use due care. See Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

■ Moreover, the mere fact that the Government places a warning buoy over a hazard after a casualty has occurred is not evidence of negligence or of a pre-existing duty to warn. Consequently, Moran's offer of proof of the establishment of Buoy 34A at the site of the grounding as evidence of a pre-existing duty to warn will not be received. Fed.Rules Evid. Rule 407, 28 U.S. C.A.; see Indian Towing Co. v. United States, supra at 69, 76 S.Ct. 122.

■ Since Moran has failed to show that Buoy 35's being off station was the proximate cause or the contributing cause of the grounding of Barge B No. 95, the Court finds for the third-party defendant United

States and an order may be settled dismissing the third-party cause of action.

The foregoing constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Settle Judgment on Notice.