**Christopher Anthony LINER, et al.**

v.

**DRAVO BASIC MATERIALS COMPANY, et al.**

No. Civ.A. 00–1908.

United States District Court, E.D. Louisiana.

April 5, 2001.

Michael Ellis Mathieu, Houma, LA, for plaintiffs.

James Robert Silverstein, Frilot, Partridge, Kohnke & Clements, LC, New Or-

leans, LA, Catherine Maraist, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, for defendants.

### ORDER AND REASONS

BARBIER, District Judge.

Before the Court is the **Motion to Dismiss and Motion for Summary Judgment (Rec.Doc. 25)** filed by defendant, the United States of America. Plaintiff opposes the motion. The motion, set for hearing on Wednesday, March 28, 2001, is before the Court on briefs without oral argument. Because the motion and the memoranda of the parties rely on matters outside the record, the Court considers the motion solely as one for summary judgment.

### BACKGROUND

The undisputed facts of this case reveal that on the night of October 3, 1999, plaintiffs Christopher Anthony Liner and David Christopher Liner were operating a seventeen-foot fiberglass recreational vessel near the mouth of Bayou Dularge where it enters Sister Lake in Terrebonne Parish. While Christopher Liner had been informed by friends of the presence and general location of a sunken barge, and had navigated the channel on three to five previous occasions, he did not know the exact location of the sunken barge. He did know that it was located on the right (east) side of the channel, but did not know of the red nunbuoy marking the barge. Accordingly, he was trying to stay to the left (west) side as he proceeded north.

Liner proceeded through the channel at between 25–30 miles per hour through patchy fog using an intermittent Q beam [1] for illumination, with visibility of about one half-mile ahead of him. He was not using any navigational aids such as a LORAN, radar, GPS, or a fish finder that would have alerted him to the barge's presence and did not possess the Coast Guard chart showing its precise location; nor had he read or heard of the Coast Guard "notice to mariners" that would have informed him of the precise location of the barge. In navigating through the channel, Christopher Liner did not stay far enough to the left, and despite the presence of the red nunbuoy and the fact that a part which he described as the "bitt" of the barge was visible, Christopher Liner struck the sunken barge. As a result, David Liner was ejected from the boat, and Christopher Liner and other passengers were injured.

The Liners filed suit against Dravo Basic Materials, Inc., the alleged owner of the sunken barge,[2] and against the United States through the United States Coast Guard and United States Army Corps of Engineers under the Suits in Admiralty Act. The claim against the United States centers on the Liners' argument that the Government was negligent because it did not remove the sunken barge, and because the measures it took to mark the sunken barge were inadequate and the marker was improperly maintained.

The record reveals that the presence of the sunken barge was first identified by a Louisiana state agency in February 1995, and on September 14, 1995, the Coast Guard marked the wreck with a temporary wreck buoy (TRUB) and issued a safety

---

1. A Q-beam is a large spotlight that Liner used to illuminate the area in front of the boat. Because his boat was white, Mr. Liner could not keep the light on continuously, since it would reflect off his boat and blind him. To avoid this, he flashed the light off and on.

2. Because plaintiffs could never definitively establish that Dravo owned the barge, Dravo was dismissed from this suit on January 11, 2001.

broadcast notice to mariners. A previous collision had taken place between a pleasure craft and the barge on June 20, 1996, and on that same day, the Marine Safety Office in Morgan City issued a "hazard to navigation" report concerning the barge. On July 2, 1996, the temporary buoy was replaced by a radar reflective buoy, and on January 29, 1997, a request to maintain the buoy as a non-lighted buoy was submitted and approved. This decision was made based on a weighing of the cost of maintaining a lighted buoy and the low traffic pattern in the isolated area where the sunken barge lay. In April 1997, the barge and the buoy were charted on NOAA chart 11356. Following a report that the buoy was missing, in May 1999, a replacement buoy was set up.

On October 7, 1999, four days after the Liners struck the sunken barge, the Coast Guard found the buoy 60 yards south-southwest downstream of its charted position. Since the Liners were traveling north in the channel, they would have passed the buoy. Had they seen it, it would have alerted them to the presence of the sunken barge.

On these facts, the United States has moved for summary judgment arguing that with respect to the Liners' claim that it should have removed the sunken barge or marked it with a lighted marker, it is entitled to a "discretionary function" immunity from suit, and that the actions it did undertake were not negligent. In contrast, plaintiffs argue that having assumed the duty of marking the barge, the Government was required to do so with due care, and that it failed in this regard because it did not use a lighted marker.

## DISCUSSION

1. **Discretionary Function Exception to the Suits in Admiralty Act**

It is beyond cavil that the United States enjoys a sovereign immunity from

suit. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). However, through the Suits in Admiralty Act ("SAA"), 46 U.S.C.A.App. §§ 741–752 (1975), the United States waived its sovereign immunity from certain suits, consenting to be sued in admiralty cases where the claims could have been brought against a private party. *Wiggins v. United States,* 799 F.2d 962, 964 (5th Cir.1986). Nevertheless, in an effort to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984), the waiver contained in the SAA "does not waive immunity for discretionary acts of government agencies that fall within the discretionary function exception set forth in the Federal Tort Claims Act." *Theriot v. United States,* 245 F.3d 388, 396 (5th Cir.1998) citing *Baldassaro v. United States,* 64 F.3d 206, 208 (5th Cir.1995). Under the discretionary function exception, the United States is not liable for:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Courts apply a two-pronged test to determine whether challenged government conduct falls within the discretionary function exception. First, "the conduct

must be discretionary in nature, that is it must involve an element of judgment or choice." *Theriot,* at 397 (citing *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)). If the challenged conduct was undertaken pursuant to a federal statute or regulation which prescribes it, this prong is not met, because "the employee has no rightful option but to adhere to the directive." *Id.* (internal quotations omitted). Second, "the judgment or decision must be grounded on considerations of social, economic, or political public policy." *Id.* As discussed below, the record in this case indicates that the Government's actions with regard to the sunken barge were both (a) discretionary; and (b) founded on policy considerations.

### a. *Discretionary Conduct*

■ With respect to the Liners' argument that the United States was negligent in failing to remove the sunken barge, the United States contends that it is immune from suit because it was acting within its discretion when it determined to mark and chart the sunken barge and issue marine notices, rather than removing it altogether. While the **owner** of a sunken vessel is required to remove a wreck,[3] the Fifth Circuit has held that a decision by the United States to remove an obstruction to navigation is discretionary. *See, Wiggins,* 799 F.2d at 967; *see also,* 33 U.S.C. § 419.[4]

■ Likewise, the decision to mark a hazard to navigation is discretionary on the part of the Coast Guard. *Theriot,* at 396–98, citing 14 U.S.C. § 86.[5] According-

**3.** Title 33 U.S.C. § 409 provides in pertinent part:

> And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, it shall be the duty of the owner, lessee, or operator of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner, lessee, or operator so to do shall be unlawful; and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States.
> (Emphasis added).

**4.** Title 33 U.S.C. § 414 provides in pertinent part:

> Whenever the navigation of any river, lake, harbor, sound, bar, canal, or other navigable waters of the United States shall be obstructed or endangered by any sunken vessel, boat, watercraft, raft, or other similar obstruction, and such obstruction has existed for a longer period than thirty days, or whenever the abandonment of such obstruction can be legally established in a less

> space of time, the sunken vessel, boat, watercraft, raft, or other obstruction shall be subject to be broken up, removed, sold, or other wise disposed of by the Secretary of the Army at his discretion, without liability for any damage to the owners of the same.
> (Emphasis added).

**5.** 14 U.S.C. § 86 provides:

> The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters or waters above the continental shelf of the United States in such manner and for so long as, in his judgment, the needs of maritime navigation require. The owner of such an obstruction shall be liable to the United States for the cost of such marking until such time as the obstruction is removed or its abandonment legally established or until such earlier time as the Secretary may determine. All moneys received by the United States from the owners of obstructions, in accordance with this section, shall be covered into the Treasury of the United States as miscellaneous receipts. This section shall not be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitably to mark the same and remove it as required by law.
> (Emphasis added).

ly, applying these statutes and precedents, it is clear that the decision of the Government not to remove the barge, but to mark it instead with a permanent unlighted marker, was discretionary. Thus, the first prong required to establish the applicability of the discretionary function exception is met in this case.

### b. *Considerations Informing the Decision*

■■■ For the discretionary function exception to apply, the challenged conduct must have resulted not only from a discretionary decision on the part of a government agent, but the decision must have been based on "considerations of social, economic, or political public policy." *United States v. Gaubert,* 499 U.S. 315, 323–24, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). The decision in this case to mark the sunken barge with a permanent unlighted buoy, was made by Steven M. Hadley of the Aids to Navigation Branch for the Eighth Coast Guard District. His undisputed affidavit testimony regarding his decision is as follows:

> The primary factors that influenced my recommendation to establish a permanent unlighted aid were that (1) the wreck was charted, (2) vessel traffic in that area was primary commercial and recreational fishing boats, (3) there was no public objection regarding the Coast Guard's proposal to establish an unlighted aid in that location, and (4) the isolated location and shallow water depths in the access routes to the wreck made servicing of a lighted aid impractical and would have resulted in an inefficient usage of limited resources.

Aff. of Steven M. Hadley, ¶ 3, USA's Memo in Support, Exh. 3.[6]

This testimony suggests that the decision to mark the wreck with an unlighted buoy is precisely the type of decision contemplated by the discretionary function exception. The decision was clearly based on a weighing of the amount and type of navigational traffic against the cost of available safety measures, with consideration of public sentiment. Based on the limited traffic in the area and the lack of public objection to such an approach, the Government, in the exercise of its discretion, chose a less costly means of addressing the safety hazard (which the Court notes would have in all likelihood been satisfactory in the Liners' case had they had better running lights, proceeded more slowly through the fog, consulted an up to date navigational chart or heard and heeded the notice to mariners).

In view of these facts, the Court finds that both the decision not to remove the wreck, and the decision to install a permanent unlighted marker, were discretionary actions based upon policy considerations. Thus, the Government is entitled to discretionary function immunity in this case.

### 2. Indian Towing

■■■ The Liners argue that even if the discretionary function exception were otherwise applicable in this case, their claim is not foreclosed because once the Coast Guard voluntarily assumed the duty to mark, it assumed the obligation to use due care in doing so (which the Liners alleged it failed to do), based on the Supreme Court's holding in *Indian Towing Company v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Memo in Opp., 2.

---

**6.** *See also, id.,* Exh. 9 (indicating the decision to install a permanent unlit marker as opposed to a lighted one was specifically based on the fact that the area was a low traffic one and the lighted aid would cost $13,000.00).

*Indian Towing* involved a suit by a barge operator whose cargo was damaged when the vessel ran aground near Chandeleur Island, when the Coast Guard lighthouse that the pilot relied upon for guidance failed. The Supreme Court found the plaintiff entitled to recover under the Federal Tort Claims Act due to the Coast Guard's negligence in failing to maintain the light. Acknowledging that the decision to undertake maintaining the lighthouse was discretionary, the Supreme Court also found that once the Coast Guard undertook to provide that service, it was required to do so with due care, and that the failure to keep the light operational was a breach of that duty. Thus, under *Indian Towing,* the discretionary function exception extends only so far as the discretionary decision of whether to act; once the Government chooses to act, and has **"engendered reliance"** on the guidance it offers by its acts, the immunity ends and the Government is liable for any negligence as it would be under the SAA or the Federal Tort Claims Act. *Indian Towing,* 350 U.S. at 69, 76 S.Ct. at 126–27 (emphasis added); *see also, Wiggins,* 799 F.2d at 966.

While the Liners acknowledge that "[e]vidence of reliance is necessary to establish that governmental negligence was a cause of the injury," Memo in Opp. at 2–3, citing *Central Rivers Towing, Inc. v. City of Beardstown,* 750 F.2d 565, 572 (7th Cir. 1984), they argue that the reliance requirement does not apply to them because the Coast Guard marked the wreck with a nunbuoy, which is a navigational aid rather than "the type of buoy which would alert boaters or mariners to the fact that there was a submerged wreck in the area." Memo in Opp., 3. In support of this argument, they cite the Court to *Bouchard Transp. Co., Inc. v. Moran Towing and Transp. Co., Inc.,* 428 F.Supp. 153 (S.D.N.Y.1977), and point to a lengthy quote which they claim is excerpted from that case stating in part that "[i]t is imprudent for a navigator to rely on floating aids to navigation to always maintain their charted positions." Memo in Opp. at 3.

Based on this, the Liners apparently believe that if the barge was marked with a floating aid, they would have been imprudent to rely on it, and because reliance would have been imprudent, they are relieved from the reliance requirement of *Indian Towing* in this case. The flaws with this argument are numerous and devastating to the Liners' position. First, the excerpted "quote" is found nowhere in the *Bouchard* case (a district court case from another district), which actually states that "in order to establish a prima facie case, the plaintiff must prove that the negligence or failure of the Government to maintain the charted position of the buoy was the proximate cause of the grounding." 428 F.Supp. at 155.[7] Finding that no proximate cause was alleged **because the pilot did not rely on the buoy,** the *Bouchard* court dismissed the claims against the Coast Guard. *Id.* Moreover, the gist of the cited language [8] when considered in its entirety is not that mariners should ignore buoys and floating aids once they have seen them, and that any reliance on them would be misplaced; it simply states that floating aids, once visualized, should serve as a guide, but that mariners

---

**7.** The Court hopes that this misquote was an error and not a purposeful attempt to mislead it.

**8.** The Court believes the excerpt was actually taken from *Whitney S.S. Co. v. United States,* 747 F.2d 69, 73 (2d Cir.1984). Interestingly, that case states unequivocally that "[r]eliance is an essential element in a case for damages against the Coast Guard." *Id.* at 72. It differs from the present case in that the court specifically found reliance on the buoy at issue.

should maintain their charted positions. 747 F.2d at 73. There is simply no way the *Bouchard* case be construed as holding that where nunbuoys are used to mark a wreck, the reliance requirement of *Indian Towing* and its progeny is erased. Accordingly, plaintiffs' argument that they need not show reliance on the Government's acts is unpersuasive.

 Unfortunately for plaintiffs, the undisputed record evidence indicates that the Liners did not rely on any negligent acts undertaken by the Government. The Government took the steps of placing a buoy at the site, issuing a notice to mariners, and marking the hazard on NOAA charts. The Government's duty to warn of a navigational hazard is satisfied by accurately noting the hazard on the appropriate navigational chart. *See, Gemp v. United States*, 684 F.2d 404, 408 (6th Cir.1982); *see also, De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148–49 (5th Cir.1971). Plaintiffs, on the other hand, did not visualize the buoy and navigate around it, though its presence southwest of the barge days after the allision indicates they must have passed it; did not consult or rely on the NOAA charts that clearly marked the wreck; and did not hear or heed the notice to mariners warning of the wreck. To the contrary, Christopher Liner knew of the existence of the barge, did not take advantage of the Coast Guard's measures taken to safeguard mariners from the hazard presented by the barge, tried to avoid it, and failed in this effort. Accordingly, the Liners can make no colorable claim that the Government's negligence caused the damages they suffered.

### 3. *Conclusion*

In sum, as the record evidence demonstrates, the Government in this case is entitled to immunity from suit under the discretionary function exception to its waiver of immunity under the SAA, because the decision to mark the barge with an unlighted marker was a discretionary one grounded in policy considerations. Further, the rationale of *Indian Towing* does not save plaintiffs' claim because they cannot demonstrate that they relied on any negligent actions of the Government. There being no genuine issues of material fact presented, the Government is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Accordingly;

**IT IS ORDERED** that the United States' **Motion for Summary Judgment** (Rec.Doc. 25) is **GRANTED**, and plaintiffs' claims against it are hereby **DISMISSED** with prejudice.