[No. 35264-8-II.   Division Two.   June 5, 2007.]

SCOTT ALPRIN, *Appellant*, v. THE CITY OF TACOMA ET AL., *Respondents*.

P.2d 535 (1993); *ITT Rayonier, Inc., v. Dalman*, 122 Wn.2d 801, 803 n.2, 863 P.2d 64 (1993).

*Andrew J. Makar* (of *Law Office of Andrew Makar, PS*), for appellant.

*Elizabeth A. Pauli, City Attorney*, and *M. Joseph Sloan, Jr., Assistant*, for respondents.

¶1 HUNT, J. — Scott Alprin appeals the trial court's grant of summary judgment to the city of Tacoma and Tacoma Public Utilities (collectively Tacoma), whom he sued for negligence when his sailboat mast hit power transmission cables suspended above Henderson Bay. Alprin argues that the trial court erred in ruling that (1) as a matter of law, Tacoma was not negligent in failing to warn of the hazard and (2) Alprin was the sole proximate cause of his damages. We hold that, by including the power lines in the NOAA[1] charts, Tacoma fulfilled its duty to warn as a matter of law. We therefore affirm the trial court's grant of summary judgment to Tacoma.

## FACTS

### I. Sailboat "Allision"[2]

¶2 Around 1925, the United States War Department issued Tacoma a permit to construct two towers on opposite shores between Henderson Bay and Burley Lagoon near Gig Harbor, Washington. Under this permit, Tacoma strung six power transmission lines between these two towers, with a clearance of 30 feet above the mean high water level. Tacoma has maintained and has been responsible for these power lines since 1925.

¶3 NOAA chart 18448, published in September 2003, clearly notes the location of these power lines and their clearance of 30 feet between Henderson Bay and Burley Lagoon.

---

[1] The National Oceanic and Atmospheric Administration (NOAA) is an association under the United States Department of Commerce. NOAA is responsible for all official oceanic charts of United States navigable waterways.

[2] An "allision" occurs when a moving vessel collides with a stationary object. In contrast, a "collision," in admiralty parlance, is when two moving vessels collide.

¶4 On the afternoon of August 10, 2004, Scott Alprin sailed alone on his 1977 29-foot Ericson sailboat northward in Henderson Bay, intending to moor in Burley Lagoon. He had sailed in the same area the day before and had been warned by the owner of the Beach Restaurant[3] not to go past two red buoys, which he pointed out to Alprin. As Alprin sailed northward, he noticed the two red buoys near the bridge separating Henderson Bay from Burley Lagoon. He did not see any writing on them and assumed they marked a no-wake zone. Nor did he notice the power lines overhead, which he claims were masked by tree foliage.

¶5 Alprin sailed northward. He began laying anchor, looking downward not upward, and was drifting in the current when his sailboat's mast struck the overhead power lines. The resulting jolt of electricity severely injured Alprin, threw him into the water, and caused major damage to his sailboat.

## II. Procedure

¶6 Alprin sued Tacoma, alleging negligence as a matter of law for failing to warn of the overhead power line hazard. Tacoma moved for summary judgment. At oral argument on the motion for summary judgment, the parties offered (1) differing views about applicable legal principles regarding constructive knowledge of NOAA charts and lookout requirements and (2) differing accounts about whether written warnings on the buoys were visible to boaters. The trial court granted summary judgment in favor of Tacoma.

¶7 Alprin appeals.

## ANALYSIS

¶8 Alprin argues that the trial court erred in granting summary judgment to Tacoma because (1) the presumption of negligence fell on Tacoma, which placed an obstruction in a navigable waterway; (2) Tacoma is presumed negligent because the power lines were not erected with the permis-

---

[3] The name of this restaurant may have changed since the incident.

sion of the Secretary of the Army under 33 U.S.C. § 403;[4] (3) he (Alprin) is not presumed negligent for failing to have a lookout, the necessity for which is a question of fact for trial; and (4) there is no rule charging recreational boaters with knowledge of all warnings contained in NOAA charts.

¶9 Tacoma counters that (1) Alprin was presumed to be at fault because his vessel was in an allision; (2) Alprin could not show that Tacoma breached any duty because it provided adequate notice of the wire obstructions as a matter of law where the power lines' location and clearance appear in the NOAA charts for Henderson Bay; and (3) Alprin could not show he was without fault because a recreational boater is charged with knowledge of all warnings in a NOAA chart and he is required to maintain a lookout at all times.

## I. Standard of Review

¶10 When reviewing a summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We review de novo the trial court's conclusions of law. *See, e.g.*, *State v. Willis*, 151 Wn.2d 255, 261, 87 P.3d 1164 (2004).

¶11 Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437.

---

[4] Alprin argued below and asserts in passing on appeal, without support, that Tacoma's permit from the War Department authorized the power lines above Burley Lagoon, but Tacoma erected them above Henderson Bay. It is undisputed that the lines run above the spot where Burley Lagoon flows into Henderson Bay. *See* NOAA charts, supplemental filings. Thus, we do not further address this argument.

## II. Negligence in Admiralty Law

¶12  The parties agree that federal admiralty law applies here.

### A. Maritime Negligence

██ ¶13  The elements of a maritime negligence cause of action are essentially the same as those for a land-based negligence action under common law: (1) the existence of a duty that requires a standard of care or conduct to protect against foreseeable risks, (2) a breach of that duty by conduct that falls below a reasonable norm, and (3) a reasonably close causal connection between the breach of duty and the resulting loss. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630-32, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959). The plaintiff bears the burden of proof of each element by a preponderance of the evidence. *Valentine v. United States*, 630 F. Supp. 1126, 1132 (S.D. Fla. 1986).

¶14  Because admiralty law follows the same concept of comparative fault as Washington's comparative fault doctrine, the plaintiff in an admiralty negligence cause of action need not prove that the injury was caused solely by defendant's breach. Instead, the plaintiff must show only that defendant's breach caused some of the plaintiff's injury. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S. Ct. 1708, 44 L. Ed. 2d 251 (1975). Alprin, however, cannot sustain this burden here.

### B. Admiralty Law Presumptions

¶15  Within this basic framework, federal admiralty law provides several presumptions of fault or burdens that shift depending on the circumstances surrounding the incident. How these presumptions operate when they oppose one another, especially the negligence presumptions, frequently depends on the specific facts of a given case, which are often disputed.

¶16 Tacoma argues that, as a matter of law, (1) the trial court could not find Tacoma negligent because, under *Liner v. Dravo Basic Materials Co.*, 162 F. Supp. 2d 499 (E.D. La. 2001), its duty to warn of waterway obstructions is met if a NOAA chart contains notice of the obstruction; (2) Alprin was negligent because he failed to heed notice of the overhead power lines contained in the NOAA charts;[5] and (3) because Alprin's negligence was the sole proximate cause of his damages, comparative negligence does not come into play. We agree.

## 1. NOAA chart presumption of warning about hazard

¶17 As Alprin correctly notes, there is an initial presumption of fault against a party who places an obstruction in a navigable waterway, and that party bears the burden of proving that it adequately warned of the danger such that it did not breach its duty of care.[6] *Casement v. Brown*, 148 U.S. 615, 626, 13 S. Ct. 672, 37 L. Ed. 582 (1893). Alprin further argues that Tacoma misstates the law because a boater is not charged with notice of all hazards marked on NOAA charts. We disagree.

---

[5] At the summary judgment hearing, Alprin did not attack the accuracy or sufficiency of the NOAA charts. Instead, he asserted that (1) the presumption of fault operated against Tacoma, not him; (2) approaching vessels could not read the warnings on the buoys; (3) foliage obscured the power lines from view; and (4) it is unreasonable to expect recreational boaters to be aware of all hazards marked on current NOAA charts. In spite of Alprin's numerous contentions on appeal and below, the deciding question was and is: Did Alprin raise a triable issue of fact regarding Tacoma's negligence in light of law that the government is not liable if hazards are correctly marked in current NOAA charts? We agree with the trial court and answer, "No."

[6] Alprin cites *Woodford v. Carolina Power & Light Co.*, 779 F. Supp. 827, 829 (E.D.N.C. 1991), which does not apply here.

Operating at night, Woodford's fishing boat ran into an unlit electric transmission tower owned and operated by Carolina Power and Light. The *Woodford* court addressed two competing presumptions that also exist here: the allision presumption against the vessel colliding with a fixed object and the presumption against the party who placed an obstruction in a navigable waterway. The *Woodford* court ruled that once it is established that the party who placed the obstruction did so in a way that unreasonably failed to warn vessels of the obstruction, the allision presumption against the colliding vessel "disappears and the burden of going forward with its defensive evidence and evidence of particular negligent acts of plaintiffs [shifts] to the defendant." *Id.* at 831.

¶18 Tacoma has met this burden here by noting the location of the power lines and clearance on the pertinent NOAA chart. As the *Liner* court noted, "The Government's duty to warn of a navigational hazard is satisfied by accurately noting the hazard on the appropriate navigational chart." 162 F. Supp. 2d at 506[7] (citing *Gemp v. United States*, 684 F.2d 404, 408 (6th Cir. 1982); *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148-49 (5th Cir. 1971)).[8]

¶19 Consistent with *Liner*, the federal district court in *Thompson v. Consolidated Gas Electric Light & Power Co. of Baltimore*, 111 F. Supp. 719 (D. Md. 1953), held that the average recreational boater is also subject to the rule that a government fulfills its duty to warn by noting the hazard on the appropriate navigational chart. In *Thompson*, the mast of plaintiff's recreational sailboat struck an overhead power line. Although Thompson claimed there was insufficient warning of the power line clearance, the court charged him with knowledge of information contained in charts issued by the United States Coast and Geodetic Survey, which charts showed the location of the overhead power line. *Id.* at 731.

¶20 Applying these federal admiralty principles, we hold that Tacoma reasonably gave notice of the overhead power

---

[7] The *Liner* plaintiffs were operating a recreational boat at night when they struck a sunken barge. NOAA chart 11356 marked the location of the sunken barge and noted a warning buoy. The buoy, however, had since detached from the sunken barge and floated downstream. 162 F. Supp. 2d at 501-02. Nevertheless, the *Liner* court granted summary judgment to the government defendant because the plaintiffs admitted they had relied solely on friends' warnings and not on the buoy's location.

[8] In *Gemp*, the Sixth Circuit Court of Appeals held that the government did not owe a duty to warn boaters beyond the warnings contained in navigational charts. 684 F.2d at 408. In *De Bardeleben*, the Fifth Circuit held that the government was negligent in misrepresenting the location of a hazard in a "Coast and Geodetic Survey" marine chart. 451 F.2d at 141, 148. There has been no such showing here, however.

lines by noting this hazard and their clearance in NOAA charts for Henderson Bay/Burley Lagoon.[9]

## 2. Alprin's presumed negligence and fault as a matter of law

¶21 Admiralty law's presumption of fault falls on Alprin, the vessel in the allision with the hazard noted in the NOAA charts. Alprin does not overcome this presumption.[10]

¶22 Alprin is presumed negligent and at fault for having allided with a fixed object noted on the applicable NOAA charts.[11] *See The Oregon,* 158 U.S. 186, 202-03, 15 S. Ct. 804, 39 L. Ed. 943 (1895); *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790, 794-95 (5th Cir.), *reh'g denied,* 564 F.2d 97 (1977). Such vessel may overcome the presumption if its operator can prove that he acted with "reasonable precautions under the circumstances. . . . The standard of reasonableness is that of prudent men familiar with the ways and vagaries of the sea." *Pet. of U.S. as owner of S/S Winged Arrow,* 425 F.2d 991, 995 (5th Cir. 1970); *The Elwood,* 69 F. Supp. 368, 369 (S.D. Cal. 1947).

¶23 Here, Alprin did not overcome this presumption of negligence. He does not show that he operated his vessel taking reasonable precautions under the circumstances. He did not bother to consult or to take notice of the NOAA chart, which clearly showed the location and clearance of

---

[9] We further note Alprin cannot support his suggestion that the NOAA charts may not have accurately noted the location of the power line towers. *See* notes 4 and 5, *supra.*

[10] Nor does Alprin overcome this presumption with his assertion that material questions of fact remain as to fault and causation, rendering summary judgment improper.

[11] Because admiralty law follows the doctrine of comparative fault, similar to Washington's civil law doctrine of comparative fault, summary judgment would have been improper only if Alprin had raised any evidence showing that Tacoma was negligent and that it partially caused the allision. *See Reliable Transfer Co.,* 421 U.S. 397; *Woodford,* 779 F. Supp. at 829. But such was not the case here. As we note above, Tacoma cannot be negligent where the NOAA charts properly marked the location and clearance of the power lines above the confluence of Henderson Bay and Burley Lagoon.

the power lines. And he did not heed the red danger buoys, claiming instead to have mistakenly believed that they marked a no-wake zone, also contrary to the NOAA charts.

¶24 In contrast, NOAA chart 18448, published in September 2003 and applicable at the time of Alprin's allision, clearly notes the location of the power lines and their clearance of 30 feet above the confluence of Henderson Bay and Burley Lagoon. We are bound by the admiralty rule that any boater, even a recreational one, is charged with knowledge of all warnings and hazards contained in NOAA charts. We hold, therefore, that the trial court properly presumed Alprin negligent as a matter of law and properly granted summary judgment to Tacoma.

### III. Public Recreational Area Where Injury Occurred

¶25 Alprin raises an additional argument on appeal—that Tacoma is presumed negligent because it maintained a public recreational area where an injury occurred. This argument also fails.

¶26 Alprin attempts to apply to waterways Washington state negligence law pertaining to city streets. We reject this attempt because it is not on point and, as the parties agree, admiralty law applies here. Furthermore, none of the cases Alprin cites support this novel assertion of law. Thus, we do not further consider this argument.

¶27 Affirmed.

ARMSTRONG and PENOYAR, JJ., concur.